MASSACHUSETTS ELECTRIC COMPANY *vs.*
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION.

Suffolk. January 4, 1978. — May 4, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Massachusetts Commission Against Discrimination. Anti-Discrimination Law. Statute*, Construction, Preemption. *Practice, Civil*, Parties. *Labor. Voluntary Association*, Labor union. *Damages*, Under anti-discrimination law, Counsel fees.

A construction of G. L. c. 151B, § 4, requiring the inclusion of pregnancy-related disabilities in a comprehensive disability plan was not precluded by the Supreme Court's interpretation of 42 U.S.C. § 2000e et seq. (1970) in *General Elec. Co.* v. *Gilbert*, 429 U.S. 125 (1976). [165-167]

The exclusion of pregnancy-related disabilities from a company's comprehensive disability plan constituted discrimination because of sex in violation of G. L. c. 151B, § 4. [167-172]

On appeal from a decision of the Massachusetts Commission Against Discrimination, a company was precluded by G. L. c. 151B, § 6, from raising an issue in this court which was not raised before the commission. [172-173]

Preemption of State labor regulation by the National Labor Relations Act did not preclude application of G. L. c. 151B, § 4, to require the inclusion of pregnancy-related disabilities in a comprehensive disability plan contained in a collective bargaining agreement nor require construction of the statute in accordance with the standards expressed in *General Elec. Co.* v. *Gilbert*, 429 U.S. 125 (1976). [173-176]

General Laws c. 151B did not authorize the maintenance of a class action in a proceeding before the Massachusetts Commission Against Discrimination. [176-177]

In a proceeding before the Massachusetts Commission Against Discrimination challenging the exclusion of pregnancy-related disabilities from a company's comprehensive disability plan contained in a collective bargaining agreement, the commission erred in granting a union standing to file the complaint in the absence of evidence and findings concerning the union's role in negotiating the agreement. [177-179]

CIVIL ACTION commenced in the Superior Court on July 12, 1976.

The case was reported by *Lynch*, J., to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Philip Moss & Harold N. Mack* for the plaintiff.

*Jeffrey J. Binder* for the defendant.

*Gene D. Dahmen*, for the Women's Rights Project of the Massachusetts Civil Liberties Union Foundation, amicus curiae, submitted a brief.

ABRAMS, J. In this appeal the plaintiff Massachusetts Electric Company (company) seeks review of a decision of the defendant Massachusetts Commission Against Discrimination (commission) ordering the company to cease and desist from maintaining its policy of denying disability benefits for pregnancy-related temporary disabilities and to pay compensation to all those who would have received disability benefits if their disabilities had been other than pregnancy-related. The central issue presented by this case is whether the exclusion of temporary disabilities related to pregnancy from a comprehensive disability plan constitutes unlawful sex discrimination in employment in violation of G. L. c. 151B. We hold that such an exclusion is unlawful sex discrimination and affirm that portion of the commission's decision which requires pregnancy-related disabilities to be compensated under a comprehensive disability plan.

The collective bargaining agreements between the company and the unions representing its employees provided that temporary disability benefits would be paid to employees for both occupational and nonoccupational disabili-

ties.[1] The only situations in which benefits are not provided under the collective bargaining agreement are in cases involving excessive use of alcohol or narcotics or refusal to observe company safety rules.

During the summer of 1972 the company adopted a "Leave of Absence for Pregnancy" policy. This policy provided that disability benefits would not be paid during a pregnancy-related leave of absence. On March 28, 1974, the company amended its "Leave of Absence for Pregnancy" policy. The section concerning disability benefits remained unchanged.

On May 8, 1973, Beverly Harris (Harris), an employee of the company and a member of Local 337 of the Brotherhood of Utility Workers, suffered a miscarriage when she was approximately four and one-half months pregnant. In connection with the miscarriage she was hospitalized for five days. Harris returned to work after an absence of five weeks; her doctor stated that during that time she was unable to resume active employment. Prior to her return to work, Harris was notified by her supervisor that because her absence was pregnancy-related she was ineligible for temporary disability benefits. Accordingly, she never received any benefits to compensate her for the period during which

---

[1] The primary provisions of the disability portion of the collective bargaining agreement state:

"4. *Occupational & Non-Occupational Disability Benefits*

"A. For the first week of temporary disability . . . normal wages or salary will be paid, whether the disability is of an occupational or nonoccupational nature. . . .

"B. After first week of a temporary non-occupational disability. . ., full normal wages or salary. . ., to which the employee is entitled, will be paid for not longer than one week for each completed year of continuous service dating from the employee's original employment by either the Company or a presently or formerly affiliated company.

"After first week of a temporary occupational disability. . . full normal wages or salary . . . less the amount of workmen's compensation benefits, if any, to which the employee is entitled, will be paid for not longer than two weeks for each completed year of continuous service dating from the employee's original employment by either the Company or a presently or formerly affiliated company."

375 Mass. 160                                                                 163

Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination.

she was absent from work in connection with the miscarriage.

Glenna Lehtonen (Lehtonen), a company employee and a member of Local 337, suffered a miscarriage on December 18, 1973, when she was approximately two months pregnant. She was absent from work for three days, her physician having advised her to remain home during this period. Prior to her return, Lehtonen was informed by her supervisor that she was ineligible for disability benefits since her absence was pregnancy-related. She has never received disability benefits for the period during which she was absent from work due to a miscarriage.

Rita Moore (Moore), a company employee and a member of Local 12007 of the United Steel Workers of America, suffered complications concerning her pregnancy at the end of January, 1974, when she was approximately seven weeks pregnant. Her physician advised her to go home and remain at home until February 12, 1974. On February 12, Moore's doctor advised her that she could return to work on a part-time basis. However, she was advised by her supervisor that there was no part-time work available for her. On March 12, 1974, Moore returned to work full time. Before her return she had been informed by her supervisor that she was not eligible for temporary disability benefits because her absence was pregnancy-related. Moore has never received disability benefits for the period during which she was absent from work due to the complications involved with her pregnancy.

Local 337 of the Brotherhood of Utility Workers (union) is the collective bargaining agent for the employees at the company's Gardner, Massachusetts, facility. The union represents approximately 170 of the company's employees, including Harris and Lehtonen. On or about May 13, 1973, Harris notified David H. Thompson, the president of Local 337, that she had been informed by her supervisor that she was ineligible for temporary disability benefits for the period during which she was absent from work in connection with a miscarriage. She requested him to represent her

in an attempt to convince the company to allow her to use her temporary disability benefits. Thompson met twice with managerial employees of the company. On both occasions he was told that the company would not allow Harris to apply her disability benefits to the period during which she was absent since her disability was pregnancy-related.

Harris, Lehtonen, Moore, and Local 337 filed complaints with the commission charging the company with discrimination based on sex in violation of G. L. c. 151B, § 4. Harris and Local 337 sought to bring their complaints as class actions. After investigation, the investigating commissioner found probable cause to credit the allegations of each of the complaints. See G. L. c. 151B, § 5. Conciliation efforts were unsuccessful, and the cases were consolidated for public hearing.

A public hearing was held on March 13, 1975, before a single commissioner. The company moved to dismiss the complaint filed by Local 337 on the ground that the union was not a proper party entitled to file a complaint pursuant to G. L. c. 151B and the commission's "Rules for Adjudicatory Proceedings." This motion was denied. The company also moved that the class action portions of the complaints filed by Harris and Local 337 be dismissed. This motion was also denied, and the commissioner concluded that the class represented by Harris and the union consisted of "all females of childbearing age who might be employed or who have been employed for any time commencing with the date of November 30, 1972 by the . . . [company] at any of its facilities located in Massachusetts who have been or continue to be or might become adversely affected by the practices of the . . . [company] with respect to pregnancy related disabilities of employees." The commissioner determined that the company's "Leave of Absence for Pregnancy" policy violated G. L. c. 151B, § 4, and ordered the company to cease and desist from maintaining the policy and to pay female employees who were absent from work because of pregnancy-related disabilities the amount of temporary disability benefits they would have received had their

disabilities not been pregnancy-related. The commissioner also awarded reasonable attorney fees for the services of the private counsel who represented the complainants.

The company appealed the decision of the single commissioner to the full commission which affirmed the single commissioner's decision. The company then sought review of the commission's decision in the Superior Court. A judge of the Superior Court, pursuant to the parties' request, reserved and reported the case. G. L. c. 231, § 111. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted direct appellate review.

We hold that the commission's determinations that this action could be maintained as a class action and that the union possessed standing are erroneous; we affirm the commission's decision and order in so far as it applies to the individual plaintiffs; and we reverse the award of attorney fees.[2]

1. *Violation of G. L. c. 151B, § 4.*

General Laws c. 151B, § 4, as amended through St. 1965, c. 397, § 4, provides: "It shall be an unlawful practice: 1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, age, or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." In *General Elec. Co. v. Gilbert,* 429 U.S. 125 (1976), the Supreme Court held that the exclusion of pregnancy-related disabilities from a temporary disability plan did not violate Title

---

[2] Those employees of the company to whom the decision today may be applicable but who are no longer parties because of the determinations that a class action cannot be maintained and that the grant of standing to the union was improper may now apply to the commission individually for relief. We need not decide at this time whether the statute of limitations is tolled for them by the initial filing of the class action. See *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 552-556, 560-561 (1974).

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-15 (1970). Because of the similarities between G. L. c. 151B, § 4, and Title VII,[3] the company contends that *Gilbert* should dictate the result of this decision. We disagree.

Federal statute, 42 U.S.C. § 2000e-7 (1970), provides: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." Section 2000h-4 of 42 U.S.C. (1970), which applies to Titles I-XI of the Civil Rights Act of 1964, provides: "Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act or any provision thereof." *Gilbert* interpreted 42 U.S.C. § 2000e-2(a)(1) (1970) as not requiring the inclusion of pregnancy-related disabilities in a disability plan; *Gilbert* did not hold that the inclusion of pregnancy-related disabilities violated Title VII. Hence, an interpretation of G. L. c. 151B, § 4, which required the inclusion of such disabilities in a comprehensive disability plan would not "require . . . the doing of any act which would be an unlawful employment practice" under 42 U.S.C. § 2000e et seq (1970). The major purpose of Title VII was "to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national

---

[3] Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) (1970), makes it an unlawful practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

origin." *Franks* v. *Bowman Transp. Co.*, 424 U.S. 747, 763 (1976). An interpretation of G. L. c. 151B, § 4, requiring the inclusion of pregnancy-related disabilities in a comprehensive disability plan would impose a higher duty than that existing under present Federal law; such a construction, however, is certainly not inconsistent with the expressed purpose of Title VII of eliminating all practices which lead to inequality in employment opportunity. See *Anderson* v. *Upper Bucks County Area Vocational Technical School*, 30 Pa. Commw. Ct. 103, 108 (1977).

Thus, Title VII and the decisions construing it are not determinative of the questions presented in this case; rather the issue presented is purely one of the interpretation of a Massachusetts statute. See *Brooklyn Union Gas Co.* v. *New York State Human Rights Appeal Bd.*, 41 N.Y.2d 84 (1976); *Anderson* v. *Upper Bucks County Area Vocational Technical School*, *supra*; *Time Ins. Co.* v. *Department of Indus., Labor & Human Relations*, No. 154-423 (Wis. Cir. Ct., Dane County, Jan. 3, 1978). While interpretations of a Federal statute which is similar to the State statute under consideration are often helpful in setting forth all the various policy considerations, such interpretations are not binding on a State court construing its own State statute.

In considering whether the exclusion of benefits for pregnancy-related disabilities from a comprehensive disability plan violates G. L. c. 151B, § 4, the initial inquiry necessarily involves determining whether distinctions based on pregnancy are sex-linked classifications. Pregnancy is a condition unique to women, and the ability to become pregnant is a primary characteristic of the female sex. Thus any classification which relies on pregnancy as the determinative criterion is a distinction based on sex. *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 149 (1976) (Brennan, J., dissenting) ("Surely it offends common sense to suggest . . . that a classification revolving around pregnancy is not, at the minimum, strongly 'sex related'"). *Id.* at 161-162 (Stevens, J., dissenting) ("By definition, . . . [placing pregnancy in a class by itself] discriminates on account of sex; for it is the

capacity to become pregnant which primarily differentiates the female from the male"). *Gilbert* v. *General Elec. Co.*, 375 F. Supp. 367, 381 (E.D. Va. 1974), rev'd 429 U.S. 125 (1976) ("[Pregnancy] is undisputed[ly] and inextricably sex-linked. . . . That [exclusion of pregnancy-related disabilities] is discriminatory by reason of sex is self evident"). See *Black* v. *School Comm. of Malden*, 365 Mass. 197, 209-211 (1974).

The exclusion of pregnancy-related disabilities, a sex-based distinction, from a comprehensive disability plan constitutes discrimination. While men are provided comprehensive coverage for all disabilities which will necessitate their absence from work, including male-specific disabilities, women are not provided the assurance of comprehensive protection from the inability to earn income during a period of disability. *Geduldig* v. *Aiello*, 417 U.S. 484, 501 (1974) (Brennan, J., dissenting). *Gilbert* v. *General Elec. Co.*, 519 F.2d 661, 664 (4th Cir. 1975), rev'd 429 U.S. 125 (1976). See *Black* v. *School Comm. of Malden, supra* at 209-211. Pregnancy exclusions in disability programs "both financially burden women workers and act to break down the continuity of the employment relationship, thereby exacerbating women's comparatively transient role in the labor force." *General Elec. Co.* v. *Gilbert*, 429 U.S. 125, 158 (1976) (Brennan, J., dissenting). See Comment, *Geduldig* v. *Aiello:* Pregnancy Classifications and the Definition of Sex Discrimination, 75 Colum. L. Rev. 441, 457-458 (1975); Comment, Love's Labors Lost: New Conceptions of Maternity Leaves, 7 Harv. C.R.-C.L.L. Rev. 260, 260-262 (1972). Moreover, pregnancy exclusions reflect and perpetuate the stereotype that women belong at home raising a family rather than at a job as permanent members of the work force. Johnston, Sex Discrimination and the Supreme Court — 1971-1974, 49 N.Y.U.L. Rev. 617, 678-680 (1974); Comment, 75 Colum. L. Rev., *supra* at 458-459; Comment, 7 Harv. C.R.-C.L.L. Rev., *supra* at 286-287.

Any argument that the exclusion of pregnancy-related disabilities is not discriminatory because pregnancy, unlike

375 Mass. 160                                     169

Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination.

other disabilities, is "voluntary" is not persuasive. First of all, even if pregnancy were shown to be "voluntary,"[4] such a distinction between it and other disabilities is a "shallow" one: "[pregnancy] is . . . a natural incident of married life that definitely results in disability, but of variable duration." *Black* v. *School Comm. of Malden, supra* at 209-210. Secondly, any plausibility which might attach to this distinction is lost since, under the comprehensive disability plan involved in the present case, benefits are provided for numerous "voluntary" disabilities. See *General Elec. Co.* v. *Gilbert,* 429 U.S. 125, 151 (Brennan, J., dissenting); *S.C.* 519 F.2d 661, 665 (4th Cir. 1975); *S.C.* 375 F. Supp. 367, 381 (E.D. Va. 1974); *Wetzel* v. *Liberty Mut. Ins. Co.,* 511 F.2d 199, 206 (3d Cir. 1975), vacated, 424 U.S. 737 (1976).

Thus, the exclusion of pregnancy-related disabilities from the company's comprehensive disability plan is discrimination because of sex in violation of G. L. c. 151B, § 4. See *Black* v. *School Comm. of Malden, supra* at 209-211; Johnston, 49 N.Y.U. L. Rev., *supra;* Comment, Pregnancy and Employment Benefits, 27 Baylor L. Rev. 767 (1975); Comment, Pregnancy and the Constitution: The Uniqueness Trap, 62 Cal. L. Rev. 1532 (1974); Comment, 75 Colum. L. Rev. *supra;* Comment, 7 Harv. C.R.-C.L.L. Rev., *supra.* Additional support for our conclusion is found in the commission's regulations which provide in pertinent part: "Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment." Such an administrative interpretation is entitled to great weight particularly where, as here, the

---

[4] With respect to pregnancy this court has stated that "[t]he perpetuation of the human race cannot be termed a voluntary act, but it rests upon instincts and desires, which are fundamentally imperative." *Sullivan* v. *Old Colony St. Ry.,* 197 Mass. 512, 515 (1908).

legislative policy is only broadly set out in the governing statute. *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 850 (1977). See *Black* v. *School Comm. of Malden, supra* at 211. See also *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 446-447 (1973).[5]

Further, our determination that the exclusion of pregnancy-related disabilities from a comprehensive plan is sex discrimination in violation of G. L. c. 151B, § 4, is in accord with the conclusion of the majority of State courts which have considered whether pregnancy exclusions violate their State antidiscrimination laws after *Gilbert.*[6] *Brooklyn Union Gas Co.* v. *New York State Human Rights Appeal Bd.,* 41 N.Y.2d 84 (1976). *Anderson* v. *Upper Bucks County Area Vocational Technical School,* 30 Pa. Commw. Ct. 103 (1977). *Time Ins. Co.* v. *Department of Indus., Labor*

---

[5] In *General Elec. Co.* v. *Gilbert,* 429 U.S. 125 (1976), a majority of the Supreme Court refused to accord deference to a guideline of the Equal Employment Opportunity Commission (EEOC) which was similar to the commission's regulation. However, the reasons why the Court did not rely on the EEOC guideline are not applicable in this case. The Supreme Court first noted that Title VII did not confer on the EEOC the authority to promulgate rules or regulations. *Id.* at 141. General Laws c. 151B, § 3, authorizes the commission to adopt rules and regulations, and rules and regulations adopted pursuant to such legislative authorization have the force of law. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977). The second reason given by the Court was that the guideline contradicted an earlier position concerning pregnancy exclusions taken by the EEOC. *Gilbert* at 142. The final reason was that the EEOC guideline conflicted with an interpretive regulation of the wage and hour administrator under the Equal Pay Act. *Id.* at 143-145. No evidence was presented nor were any arguments advanced in this case to demonstrate that the commission's regulation was inconsistent with an earlier interpretation or that it was in conflict with any related statute.

[6] *Narragansett Elec. Co.* v. *Rhode Island Comm'n for Human Rights,* R.I.       (1977) (374 A.2d 1022 [1977]), is the only State court decision of which we are aware which has concluded after *Gilbert* that the exclusion of pregnancy-related disabilities did not violate a State antidiscrimination law. In reaching this decision the Rhode Island court relied primarily on the rationales contained in *Gilbert* and *Geduldig* v. *Aiello,* 417 U.S. 484 (1974), which we have declined to follow.

*& Human Relations,* No. 154-423 (Wis. Cir. Ct., Dane County, Jan. 3, 1978). The six Federal Circuit Courts which considered whether pregnancy exclusions violated Title VII prior to *Gilbert* also concluded that such a practice was unlawful sex discrimination. *Communication Workers* v. *American Tel. & Tel. Co., Long Lines Dep't,* 513 F.2d 1024 (2d Cir. 1975), vacated, 429 U.S. 1033 (1977). *Wetzel* v. *Liberty Mut. Ins. Co.,* 511 F.2d 199 (3d Cir. 1975), vacated, 424 U.S. 737 (1976). *Gilbert* v. *General Elec. Co.,* 519 F.2d 661 (4th Cir. 1975), rev'd 429 U.S. 125 (1976). *Tyler* v. *Vickery,* 517 F.2d 1089 (5th Cir. 1975), cert. denied, 426 U.S. 940 (1976). *Satty* v. *Nashville Gas Co.,* 522 F.2d 850 (6th Cir. 1975), vacated in part, 434 U.S. 136 (1977). *Hutchison* v. *Lake Oswego School Dist.,* 519 F.2d 961 (9th Cir. 1975), vacated, 429 U.S. 1033 (1977).

The company argues, however, that portions of G. L. c. 149, § 105D, indicate a legislative intention not to require employers to include pregnancy-related disabilities in comprehensive disability plans. A reading of § 105D in context, however, discloses no such legislative intent.

The first passage of G. L. c. 149, § 105D, inserted by St. 1972, c. 790, § 1, relied on by the company provides: "[T]he employer need not provide for the cost of any benefits, plans, or programs during the period of maternity leave unless such employer so provides for all employees on leave of absence." Chapter 149, § 105D, preserves certain rights of female employees during a maternity leave of up to eight weeks. Section 105D also provides that "[s]uch maternity leave shall not affect the employee's right to receive vacation time, sick leave, bonuses, advancement, seniority, length of service credit, benefits, plans or programs for which she was eligible at the date of her leave . . . ." When read in this context, the passage relied on by the company indicates that the employer need only provide those benefits to which the employee would be entitled under existing company benefit plans but that it need not provide for any additional benefits covering the entire eight-week period unless such benefits are provided to others on leaves of

absence. See Massachusetts Commission Against Discrimination Maternity Leave Regulation — Sex Discrimination in Employment.

The company also relies on a portion of § 105D which states that "maternity leave may be with or without pay at the discretion of the employer." The sentence which precedes this passage provides that the employee "shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave." The reference to "pay" in the sentence which the company relies on thus clearly refers to salary, not to disability benefits.

2. *Cost as a Defense.*

The company further argues that the legitimate public interest in minimizing the cost of electricity is sufficient to justify the disparate treatment between pregnancy and other temporary disabilities. We disagree.

General Laws c. 151B, § 6, as amended through St. 1957, c. 426, § 5, provides in pertinent part: "No objection that has not been urged before the commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." The company never raised the issue of cost during any of the proceedings before the commission. Nor does the company contend that any extraordinary circumstances prevented it from urging the cost issue during that time. Since the company failed to raise the issue of cost before the commission, it is precluded from raising it in this court. *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 364 (1974). *Massachusetts Comm'n Against Discrimination* v. *Colangelo*, 344 Mass. 387, 398-399 (1962).

Moreover, even if the issue were properly before us, cost considerations alone cannot constitute a defense to a violation of G. L. c. 151B, § 4. See *Black* v. *School Comm. of Malden*, 365 Mass. 197, 210 (1974); *Gilbert* v. *General Elec. Co.*, 375 F. Supp. 367, 382 (E.D. Va. 1974), reversed on other grounds, 429 U.S. 125 (1976); *Brooklyn Union Gas*

375 Mass. 160                                    173

Massachusetts Elec. Co. *v.* Massachusetts Comm'n Against Discrimination.

*Co. v. New York State Human Rights Appeal Bd.*, 41 N.Y.2d 84, 90 (1976).[7]

3. *Preemption by the National Labor Relations Act.*

The company next argues that a construction of G. L. c. 151B, § 4, which precludes the exclusion of pregnancy-related disabilities from a comprehensive disability plan is preempted by Federal labor law.[8] We disagree.

The company relies on the line of preemption analysis under which the regulation of conduct intended to be left to the free play of economic forces is preempted. See *Lodge 76, Int'l Ass'n of Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 138-140 (1976). The thrust of its contention is that the extent of disability benefits, which is a mandatory subject of bargaining, is to be left under Federal labor law to the free negotiation of the parties. See

---

[7] The issue involved is not really whether the inclusion of pregnancy-related disabilities is costly; rather it concerns whether the individuals or the company's customers are to bear the cost of these disabilities. In another context we have said that the purpose of the Workmen's Compensation Act "is to treat the cost of personal injuries incidental to the employment as a part of the cost of the business." *Madden's Case*, 222 Mass. 487, 494-495 (1916).

[8] The commission contends that the company cannot now raise this issue since it did not raise it before the commission. See G. L. c. 151B, § 6. The company's preemption argument, however, relies to some extent on the opinion in *General Elec. Co.* v. *Gilbert*, 429 U.S. 125 (1976). Since this decision was not handed down until the proceedings before the commission had been concluded, "extraordinary circumstances" exist which warrant allowing the company to raise the preemption issue before this court. The commission further argues that the company is precluded from raising the preemption question here since the company's offer of proof that the unions agreed to the pregnancy policy, which was the only evidence linking the policy to the collective bargaining process, was made only for the purpose of challenging Local 337's standing and since this offer of proof was inadequate to demonstrate that the policy was agreed to as part of the collective bargaining process. Since the preemption argument partially relies on *Gilbert*, the fact that the offer of proof before the commission was limited to standing does not preclude the consideration of this evidence in connection with the preemption issue. The substance of the offer of proof was that, in fact, the unions had agreed to the "Leave of Absence for Pregnancy" policy. Such an attempted showing is adequate to link the pregnancy policy with the collective bargaining process. Therefore, we consider the preemption issue properly before us.

*Lodge 76, Int'l Ass'n of Machinists* v. *Wisconsin Employment Relations Comm'n, supra* at 140-148, 151-154; *Local 24, Int'l Bhd. of Teamsters* v. *Oliver,* 358 U.S. 283, 295-297 (1959). The company maintains, therefore, that a State antidiscrimination law cannot be applied to negate the terms of an agreement negotiated in the course of the collective bargaining process.

While it may be true that, in general, State laws which place restrictions on the agreement of the parties concerning mandatory subjects of bargaining are preempted, such an analysis alone does not preclude the application of State law since there are two major exceptions to the preemption doctrine: activities which are "merely peripheral concern[s]" of the National Labor Relations Act and conduct which "touche[s] interests so deeply rooted in local feeling and responsibility" may continue to be regulated by State law. *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236, 243-244 (1959). See *Farmer* v. *United Bhd. of Carpenters, Local 25,* 430 U.S. 290, 296-297 (1977); *Lodge 76, Int'l Ass'n of Machinists* v. *Wisconsin Employment Relations Comm'n, supra* at 136-137. Discrimination in employment opportunity is generally considered to be a "peripheral concern" of the National Labor Relations Act,[9] and thus State antidiscrimination statutes are not preempted by Federal labor law. See *Colorado Anti-Discrimination Comm'n* v. *Continental Air Lines, Inc.,* 372 U.S. 714, 724 (1963); *Time Ins. Co.* v. *Department of Indus., Labor & Human Relations,* No. 154-423 (Wis. Cir. Ct., Dane County, Jan. 3, 1978); R. Gorman, Labor Law Unionization and Collective Bargaining 768 (1976); Cox, Labor Law Preemption Revisited, 85 Harv. L. Rev. 1337, 1355 (1972). See also *Vaca* v. *Sipes,* 386 U.S. 171 (1967). Cf. *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 51-52 (1974); *United States* v. *Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826, 857-858 (5th Cir. 1975), cert. denied sub nom. *Harris* v.

---

[9] The Equal Employment Opportunity Commission is the agency concerned with discrimination in employment.

*Allegheny-Ludlum Indus., Inc.,* 425 U.S. 944 (1976); *Robinson* v. *Lorillard Corp.,* 444 F.2d 791, 799 (4th Cir.), cert. dismissed, 404 U.S. 1006 (1971), and cert. dismissed sub nom. *Tobacco Workers Int'l Union* v. *Robinson,* 404 U.S. 1007 (1972).

Relying on *Vaca* v. *Sipes, supra,* and *Linn* v. *United Plant Guard Workers, Local 114,* 383 U.S. 53 (1966), the company further argues that even if a State regulation is not preempted in the area of discrimination, the preemption doctrine requires the State to apply the Federal standards enunciated in *General Elec. Co.* v. *Gilbert,* 429 U.S. 125 (1976). First of all, requiring the States to follow *Gilbert,* which held that exclusion of pregnancy-related disabilities is permissible, would preclude the application of State laws under which the exclusion of such disabilities is a violation. Thus, the company's argument on this point is tantamount to a contention that the preemption doctrine forbids the application of State law in this area, a position which we reject.

Secondly, the general practice in cases in which State regulation has been found not to be preempted has been to allow the State law involved to govern the action. See *Colorado AntiDiscrimination Comm'n* v. *Continental Air Lines, Inc., supra* at 724; *Time Ins. Co.* v. *Department of Indus., Labor & Human Relations,* No. 154-423 (Wis. Cir. Ct., Dane County, Jan. 3, 1978). In cases in which a State action has been allowed but Federal standards have been applied, special circumstances have warranted this approach. Such circumstances are not present in this case. In *Vaca* v. *Sipes, supra* at 177, Federal law governed the case because the cause of action was grounded in Federal statutes; in the present case the cause of action is based on State law. And in *Linn* v. *United Plant Guard Workers, Local 114, supra* at 63-66, Federal standards were used primarily because it was felt that the threat of State law libel actions and excessive damage awards might be used as weapons of economic coercion. There is no such threat of potential eco-

nomic coercion inherent in allowing State law to govern actions involving sex discrimination.

4. *Class Action Status.*

The company argues that the commission erred as matter of law by failing to dismiss so much of the complaints filed by Harris and the union as alleged a class action. We agree. The commission was not authorized to allow the bringing of class actions.[10]

The commission has only those powers, duties, and obligations conferred on it by statute or reasonably necessary for its proper functioning. *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 189 (1976), and cases cited. General Laws c. 151B does not authorize the maintenance of class actions before the commission. Chapter 151B, § 3, cl. 5, does empower the commission to "adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter, and the policies and practice of the commission in connection therewith." However, no rule or regulation of the commission authorizes the maintenance of class actions.[11] Finally, the authorization of class actions is not the

---

[10] We need not decide whether the commission may by rule authorize the maintenance of class actions, see G. L. c. 151B, § 5; cf. *Hackley* v. *Roudebush*, 520 F.2d 108, 151-153 n.177 (D.C. Cir 1975); *Barrett* v. *United States Civil Serv. Comm'n*, 69 F.R.D. 544, 549-554 (D.D.C. 1975), or whether class actions may be maintained only in a trial court after court certification, see G. L. c. 151B, § 6; Mass. R. Civ. P. 23, 365 Mass. 767 (1974).

[11] In determining that a class action was proper in the present case, the commission relied on rule 2.02 of the commission's Rules for Adjudicatory Proceedings. This rule, however, merely allows the investigating commissioner or the complainant to amend the complaint. Rule 2.02 provides in full:

"The Investigating Commissioner or the complainant may amend the complaint at any time prior to the issuance of a notice of public hearing as provided for in Rule 10.02. The complaint may be amended thereafter by the Investigating Commissioner or the complainant with leave of the hearing commissioners. In each instance a copy of the amended complaint shall be served on the parties. When a complaint is amended prior to the date of the hearing but after a notice of hearing has been issued and an answer filed, the respondent may amend his answer within ten days after

type of ancillary action comprehended within the grant of authority allowing the exercise of powers "reasonably necessary" for the proper functioning of the commission. See *Scannell* v. *State Ballot Law Comm'n,* 324 Mass. 494, 501-502 (1949).

5. *Standing of the Union.*

The company also argues that the commission erred as matter of law by failing to dismiss the union's complaint since the union was not a proper person to file a complaint.

Section 5 of G. L. c. 151B provides in pertinent part: "Any person claiming to be aggrieved by an alleged unlawful practice . . . may . . . file with the commission a verified complaint . . . ." Section 2.01-(1) of the commission's Rules for Adjudicatory Proceedings provides in part: "The following persons . . . may file a complaint with the Commission alleging violation(s) of . . . [ G. L. c.] 151B . . .: (1) any person claiming to be aggrieved by the alleged violation(s)." The issue of the standing of the union thus turns on whether the union is a "person" and a "person aggrieved."

General Laws c. 151B, § 1, cl. 1, states: "The term 'person' includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and the commonwealth and all political subdivisions, boards, and commissions thereof." The union, as an unincorporated association, thus falls within the statutory definition of "person." See *Labor Relations Comm'n* v. *Boston Teachers Local 66,* 374 Mass. 79, 93-96 (1977).

To qualify as a "person aggrieved," a person must allege substantial injury as the direct result of the action com-

---

notice of the amendment or upon the initial day of the public hearing, whichever period may be shorter. Where necessary for compliance with this rule, the respondent, by leave of the hearing commissioners may orally amend his answer at the public hearing.

"Nothing contained herein shall prevent a complaint from being amended at any time to cure technical defects or omissions. In any instance where a complaint is amended, the complaint as amended shall relate back to the original filing date."

plained of. *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 44-45 (1977). The union as a union did not sustain any direct injury as a result of the company's alleged discriminatory practices.

However, the inquiry concerning whether a representative organization is a "person aggrieved" does not end at this point since such an organization might have standing to represent its members who suffer direct injury as a result of the challenged action. See *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975); *Local 194, RWDSU* v. *Standard Brands, Inc.*, 540 F.2d 864, 865-866 (7th Cir. 1976).[12]

We need not decide whether a union would have standing to represent its members who suffer such an injury since it is unclear on this record whether or not the union had agreed to the company's "Leave of Absence for Pregnancy" policy. The company attempted to prove that Local 337 agreed to the company's policy. Testimony concerning this agreement was excluded, and the company made an offer of proof. Local 337 offered to show that it never agreed to the company's pregnancy policy.

If the union had agreed with the company as to the "Leave of Absence for Pregnancy" policy, a conflict of interest would exist between the union and the members it presently seeks to represent. Such a conflict would preclude the union from possessing standing to represent them. Moreover, if the union had negotiated with the company concerning the policy, the company would be entitled to have the agreement respected by the union. Therefore, evidence concerning the union's alleged agreement with the company's policy should have been admitted and findings based on this evidence should have been evaluated in determining whether the union had standing to represent its members.

---

[12] Some limitations might exist on the issues concerning which an organization may represent its members. In *Warth* v. *Seldin*, 422 U.S. 490, 515-516 (1975), the Supreme Court held that the standing of an organization to represent its members is ordinarily limited to invoking injunctive or declaratory relief. See *Local 194, RWDSU* v. *Standard Brands, Inc.*, 540 F.2d 864, 865-866 (7th Cir. 1976).

Once the issue of agreement was raised, it was improper for the commission to grant the union standing in the absence of evidence and findings concerning the union's role in negotiating the agreement.

6. *Award of Attorney Fees.*

The commission awarded reasonable attorney fees for the services of private counsel who represented the complainants. Both parties agree that *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303 (1976), which was decided after the commission's decision in the present action, precludes the award of attorney fees in this case.

The case is remanded to the Superior Court for the entry of judgment affirming the commission's decision and order in so far as it applies to the individual plaintiffs, reversing the commission's determinations that the proceeding before it could be maintained as a class action and that the union possessed standing, and reversing the award of attorney fees.

*So ordered.*