# United States Court of Appeals
## For the First Circuit

No. 18-1345

LAUREN MICELI,

Plaintiff, Appellant,

v.

JETBLUE AIRWAYS CORP.; MATHEW BOURGEOIS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Selya, and Lynch,
Circuit Judges.

Christopher J. Trombetta and Law Office of Christopher J. Trombetta on brief for appellant.
Samantha K. Abeysekera and Akerman LLP on brief for appellees.

January 28, 2019

**SELYA**, **Circuit Judge**. Plaintiff-appellant Lauren Miceli sued her quondam employer, JetBlue Airways Corp. (JetBlue), for handicap discrimination and retaliation under Massachusetts state law.[1] The appellant alleges that JetBlue fired her due to her disability and not (as JetBlue maintains) because she flouted company policy on unexcused absences. She also alleges that JetBlue retaliated against her for filing a complaint with the Massachusetts Commission against Discrimination (MCAD). The district court granted summary judgment in JetBlue's favor. See Miceli v. JetBlue Airways Corp., No. CV 16-12032, 2018 WL 1524539, at *6 (D. Mass. Mar. 28, 2018). Critical to the court's assessment was the appellant's failure to use measures provided by JetBlue enabling an employee to challenge a suspension or termination. See id. at *5.

The appellant assigns error. Even when viewing the record in the light most favorable to the appellant, we detect no probative evidence of discrimination or retaliation. Consequently, we affirm.

---

[1] The appellant's complaint named Mathew Bourgeois, JetBlue's inflight service manager, as a co-defendant. The parties and the district court have treated JetBlue and Bourgeois as a unit. For ease in exposition, then, we refer to JetBlue as if it were the sole defendant and appellee. Our decision, of course, binds all parties.

- 2 -

## I. BACKGROUND

We rehearse the facts "in the light most agreeable to the plaintiff, consistent with record support," Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 65 (1st Cir. 2008), and then recount the travel of the case. We reserve "more exegetic detail for our analysis of the issues on appeal." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 28 (1st Cir. 2012).

Beginning in 2006, JetBlue employed the appellant as an inflight crew member, based in the Boston area. When hired, the appellant was given access to an employee handbook (the Blue Book), which outlined, inter alia, JetBlue's policies on attendance, leave, and reasonable accommodation. As her employment progressed, the appellant began to suffer from health issues. While on duty in the fall of 2014, she experienced an ear injury. The following spring, she was diagnosed through JetBlue's third-party employee assistance program with post-traumatic stress disorder (PTSD) and depression. The appellant sought and obtained leave with respect to these conditions under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601.

In administering its FMLA program, JetBlue contracts with a third-party administrator, Metropolitan Life Insurance Company (MetLife). JetBlue's protocol channels all matters regarding FMLA approval to MetLife. In order to obtain FMLA leave based on an illness of her own, a crew member is required to

furnish MetLife with substantiating documentation from her health care provider (including a "Certificate of Health Care Provider" form).  Unless such leave is granted, absences are denoted in the crew member's schedule as "unavailable for assignment" (UNA).

Under JetBlue's dependability guidelines policy, limned in a Blue Book supplement, UNA absences are assigned category codes and point values.  The accrual of points within a twelve-month period triggers five stages of progressive guidance, culminating in an employment review upon the accumulation of twelve points. Such a review may result in the crew member's termination.

Starting in the fall of 2014, the appellant began to accrue UNA absences, which she traces to her health conditions. On February 7, 2015, she received an initial progressive guidance based on the accrual of six dependability points.  In mid-March, the appellant (upon submission of documentation from her health care provider) was pre-approved for intermittent FMLA leave of one occurrence per month in increments of one day.  The appellant received continued progressive guidance on May 28, 2015, for reaching eight dependability points.  During the accompanying meeting, the appellant lamented that many of her UNA absences from March to April (which exceeded her approved FMLA allotment) should have been excused as FMLA leave.  She also met with a supervisor to vent her frustration with what she perceived as a skeptical and condescending tone in the progressive guidance meeting.  Over a

month later, the appellant followed up on this discussion by sending an email memorializing her complaints.

On June 18, 2015, the appellant submitted amended documentation in hopes of extending the approved increments of her intermittent FMLA leave from one day per occurrence to five days per occurrence. MetLife acceded to this request. Meanwhile, the appellant continued to accrue unexcused absences. On July 17, 2015, she received a final progressive guidance (the penultimate warning) based on her accrual of ten dependability points. The appellant alleges that she submitted documentation from her health care provider in late July indicating that several of her unexcused absences from March and May were related to her PTSD and/or her depression. She urged unsuccessfully that these absences should be recoded as FMLA occurrences.

In the summer of 2015, the appellant was hospitalized several times due to mental health issues. She claims that she notified both JetBlue and MetLife of her hospitalization and that she requested FMLA and short-term disability leave by July 30, 2015. MetLife asked for substantiating documentation, which the appellant subsequently provided. The appellant furnished documentation of hospitalization commencing on August 6, 2015, and her leave was approved from that date forward. Even so, an absence two days prior to this date was coded as UNA despite the fact that the appellant appears to have been hospitalized on that date. This

unexcused absence brought the appellant's total dependability points to twelve, thus exposing her to suspension, employment review, and possible dismissal.

The appellant notified JetBlue on November 2, 2015, that she had filed a complaint with the MCAD — a complaint alleging that JetBlue had discriminated against her on the basis of her handicap in violation of Chapter 151B of the Massachusetts General Laws. On November 17 (two days after the appellant returned from her approved disability leave), JetBlue suspended her. On December 15, JetBlue, citing the appellant's numerous unexcused absences, terminated her employment.

Chapter 151B entitles complainants to bring a civil action in a state court "at the expiration of ninety days after the filing of a complaint with the commission . . . but not later than three years after the alleged unlawful practice occurred." Mass. Gen. Laws ch. 151B, § 9. The appellant filed a timely suit in the Suffolk Superior Court, alleging not only discrimination but also that JetBlue had retaliated against her for filing the MCAD complaint. Noting diversity of citizenship and the existence of a controversy in the requisite amount, JetBlue removed the suit to the federal district court. See 28 U.S.C. §§ 1332(a), 1441. Near the completion of discovery but after the expiration of the deadlines set for amending the pleadings, see Fed R. Civ. P. 16(b), the appellant sought to add an FMLA breach count. The district

court denied her motion to amend and likewise denied her motion for reconsideration.

In due course, JetBlue moved for summary judgment. See Fed. R. Civ. P. 56(a). The appellant opposed the motion, but the district court granted it. See Miceli, 2018 WL 1524539, at *6. This timely appeal ensued.

## II. ANALYSIS

The appellant assigns error to the district court's entry of summary judgment with respect to her state-law claims of both handicap discrimination and retaliation.[2] She also assigns error to the denial of her motion to amend her complaint. We address these claims of error sequentially.

### A. Summary Judgment.

We review the grant of summary judgment de novo. See Noviello v. City of Bos., 398 F.3d 76, 84 (1st Cir. 2005). Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, "presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017), cert. denied, 138 S. Ct. 1311 (2018). When a plaintiff

---

[2] Massachusetts state law refers to an individual's "handicap" rather than her "disability" — the term favored by the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. Since there is no substantive difference between the two terms, see Ocean Spray Cranberries, Inc. v. MCAD, 808 N.E.2d 257, 263 n.6 (Mass. 2004), we use them interchangeably.

opposes summary judgment, she bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). For this purpose, she cannot rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010).

1. **Discriminatory Discharge.** In Massachusetts, it is unlawful for an employer:

> . . . to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business.

Mass. Gen. Laws ch. 151B, § 4(16). Massachusetts law supplies the substantive rules of decision in this diversity suit. See Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016). That state's highest court, the Supreme Judicial Court (SJC), "look[s] to the Federal cases decided under the ADA as a guide to the interpretation of [chapter] 151B." Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1061 n.5 (Mass. 2002). The SJC, however, is not bound by federal interpretations of the ADA in

- 8 -

construing chapter 151B.  See Mass. Elec. Co. v. MCAD, 375 N.E.2d 1192, 1198 (Mass. 1978).  Indeed, the SJC has, on occasion, departed from federal law in the area of disability discrimination. See e.g., Gannon v. City of Bos., 73 N.E.3d 748, 760 n.10 (Mass. 2017); Mammone v. President & Fellows of Harvard Coll., 847 N.E.2d 276, 285 n.25 (Mass. 2006).  We proceed accordingly.

The McDonnell Douglas burden-shifting framework applies to the appellant's discriminatory discharge claim.  See Gannon 73 N.E.3d at 756 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see also Henry v. United Bank, 686 F.3d 50, 59 (1st Cir. 2012).  At the first stage of this framework, the appellant bears the burden of showing a prima facie case of discrimination.  See Gannon, 73 N.E.3d at 756.  This requires a showing that the appellant has a handicap; that she was nonetheless qualified to perform the essential functions of the job, with or without reasonable accommodation; and that, despite the foregoing, JetBlue discharged her.  See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E.3d 778, 793 (Mass. 2016); Gannon, 73 N.E.3d at 756.  As a practical matter, we can safely assume (albeit for argument's sake) that the appellant has met the prima facie case requirement, thus creating "a presumption of discrimination."  Gillen v. Fallon Ambul. Serv., Inc., 283 F.3d 11, 30 (1st Cir. 2002).

The burden of production thus shifts to JetBlue, which must proffer a legitimate reason for the adverse employment action, supported by credible evidence. See Abramian v. President & Fellows of Harvard Coll., 731 N.E.2d 1075, 1084 (Mass. 2000); see also Verdrager, 50 N.E.3d at 793. The proffered reason must be one "which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." Dávila v. Corporación De P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007); see Verdrager, 50 N.E.3d at 793. JetBlue has carried this burden: it consistently has averred that it terminated the appellant's employment in accordance with its clearly delineated and neutrally applied corporate policy after she accrued twelve dependability points. And JetBlue has buttressed this averment with documentation confirming the appellant's unexcused absences. Uniform application of a facially neutral policy that proscribes unexcused absences is a legitimate, nondiscriminatory reason for termination that is distinct from the employee's disability. See Leary v. Dalton, 58 F.3d 748, 754 (1st Cir. 1995); cf. Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003) (holding, in ADA case, that application of neutral, generally applicable policy constituted legitimate nondiscriminatory reason for refusing to rehire employee).

At the third stage of the McDonnell Douglas framework, the burden reverts to the employee to show that the adverse

- 10 -

employment action was taken "because of" her handicap and "not for the reason proffered by the employer." Gannon, 73 N.E.3d at 756 (quoting Mass. Gen. Laws ch. 151B, § 4(16)). In a Chapter 151B case, an employee can survive summary judgment on this issue by showing pretext, that is, "that there are disputed issues of fact as to whether the employer's proffered reason was not the true reason" for her termination. Id. at 757; see Verdrager, 50 N.E.3d at 794. Pretext may be demonstrated in a variety of ways, such as by exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)); see Bulwer v. Mt. Auburn Hosp., 46 N.E.3d 24, 35-38 (Mass. 2016).

The appellant contends that JetBlue's proffered reason was pretextual because JetBlue, despite alleged knowledge of her disability, did not accommodate her disability in applying its attendance policy. While the appellant might perhaps be able to demonstrate that the asserted basis for her termination was pretextual were she able to show that she requested a reasonable accommodation that would have ensured her compliance with the policy, cf. Barbuto v. Advantage Sale & Mktg., LLC, 78 N.E.3d 37, 44 (Mass. 2017) (concluding that employee's request for accommodation as to her use of medical marijuana was not facially

- 11 -

unreasonable and so termination for violating drug policy could have been discriminatory); Evans v. Fed. Exp. Corp., 133 F.3d 137, 140 (1st Cir. 1998) ("If the employee had [requested an accommodation], the firing might still be regarded as one 'because' of a handicap or at least 'because' of the denial."), she has made no such showing here.

"[F]or an employee's actions to constitute a request for accommodation, they must make the employer aware that the employee is entitled to and needs accommodation." Ocean Spray Cranberries, Inc. v. MCAD, 808 N.E.2d 257, 271 n.21 (Mass. 2004). If the requested accommodation is not suitable or the request is otherwise inappropriate, the employer nonetheless "must make a reasonable effort to determine the appropriate accommodation . . . through a flexible, interactive process that involves both the employer and the qualified individual with a disability." Russell, 772 N.E.2d at 1065 (quoting 29 C.F.R. § 1630 App. (2001) (alteration in original)).

Here, JetBlue offered its workforce specific avenues for relaying requests for accommodations. To this end, it created an email address and an online application directed to the company's human resources department. Information about these modalities was in the Blue Book and was included in relevant paperwork furnished to all crew members (such as progressive guidance

- 12 -

materials).  Although the appellant had access to these materials, she chose not to travel along either of the designated avenues.

Even so, the appellant maintains that she requested accommodations.  She locates her supposed requests for accommodation in progressive guidance meetings (in which she expressed her frustration at MetLife's coding of her FMLA absences) and in related interactions with JetBlue employees.  In particular, she focuses on a July 2015 email to Bourgeois, see supra note 1, in which she referred to having a disability and expressed her hope "for those of us with disabilities to be met with compassion and reasonable accommodations made if difficulties are faced." But an employee who seeks an accommodation must be more forthcoming:  a request for an accommodation must be reasonably specific.  See Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012).  It must comprise more than a cryptic communication to be deciphered by the recipient.  Importantly, such a request must illuminate the linkage between the requestor's disability and the requested accommodation. See id.; Ocean Spray, 808 N.E.2d at 271-72.

In Ocean Spray, for instance, the employee had provided his employer with three physician letters that supported his claim of disability and described his need for an accommodation in varying levels of detail.  See 808 N.E.2d at 271.  The SJC concluded that, in the ensemble, these letters "constitute[d] substantial

- 13 -

evidence of an unmistakable request for accommodation." Id. The court indicated, though, that any one of these letters, standing alone, might well be insufficient to constitute a request for accommodation. See id. Viewed in this light, the appellant's complaints anent MetLife's alleged incorrect coding of her absences and her email noting that people with disabilities are entitled to reasonable accommodation are far removed from any statement that JetBlue could reasonably be expected to interpret as a request for a specific accommodation.

Nor are the appellant's requests for FMLA and disability leave relevant to this inquiry. While such requests may be deemed requests for accommodation "in some circumstances," Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 128 (1st Cir. 2017) (quoting García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000)), the appellant's requests were wholly collateral to JetBlue's policy, which did not allocate dependability points on the basis of absences stemming from either approved FMLA or disability leaves. And in any event, those requests were granted.

Finally, we are not persuaded by the appellant's attempts to locate pretext in JetBlue's failure to modify its attendance policy absent any requests for modification on the appellant's part. The SJC has concluded that Chapter 151B imposes no such unilateral responsibility upon employers. See Mammone, 847 N.E.2d at 285 n.25.

- 14 -

That ends this aspect of the matter. We conclude that in as much as the appellant has not shown that she requested an accommodation as to JetBlue's attendance policy, she has failed to cast any shadow upon JetBlue's proffered reason for her termination. Therefore, we agree with the district court that the appellant has not made out a genuine issue of material fact sufficient to avoid summary judgment.

Of course, when an employer alleges that standard policies underpin an adverse employment action against a person with disabilities, that person may demonstrate pretext through a showing that the employer has not applied those policies uniformly. See Kouvchinov, 537 F.3d at 68; see also Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 142 (1st Cir. 2012). This may be accomplished by showing, say, that the adverse action departed from a clearly delineated policy, see Kouvchinov, 537 F.3d at 68, or that the employer applied such a policy differently to similarly situated employees, see Verdrager, 50 N.E.3d at 795; Bulwer, 46 N.E.3d at 36. Here, however, the theoretical availability of these alternative methods of showing pretext does not improve the appellant's lot.

To begin, the appellant has offered nothing to show that JetBlue applied its attendance policy disparately to similarly situated employees. So, too, the appellant's attempt to base liability on a supposed departure from policy lacks force. In

this respect, she alleges that MetLife miscoded her FMLA absences despite receiving proper notice and necessary substantiation, and that JetBlue fired her due to those miscoded absences.[3] But a bare showing of administrative error, without more, does not make out a case of either pretext or discriminatory discharge. After all, Chapter 151B was never intended to "protect against all instances of arbitrary action or from poor managerial judgment." Wheelock Coll. v. MCAD, 355 N.E.2d 309, 314 (Mass. 1976); cf. Kouvchinov, 537 F.3d at 67 ("[T]he anti-discrimination laws do not insure against inaccuracy or flawed business judgment on the employer's part."). Instead, the law was "designed to protect against, and to prevent, actions spurred by some discriminatory animus." Kouvchinov, 537 F.3d at 67.

Last — but far from least — the appellant's claim of pretext fails because she has adduced no evidence that JetBlue knew that there were errors in the coding of her absences when it terminated her employment. Nor has she adduced any evidence showing that she engaged in the procedures established by JetBlue to prevent such bevues from leading to termination. Under

---

[3] The district court concluded that the appellant did not provide sufficient evidence of the alleged coding errors at summary judgment. See Miceli, 2018 WL 1524539, at *3. Because we hold that the appellant's claim of pretext would fail even if she had supplied such evidence, we do not wade into the nitty-gritty of these allegations. We do note, however, that the record indicates that MetLife's operation had some serious, and seriously frustrating, kinks.

JetBlue's standard policies, the appellant had several opportunities to challenge her unexcused absences, but she chose not to avail herself of any of them. For example, the record makes manifest that she neither reviewed nor responded to her final progressive guidance. And she did not challenge (or even inquire about) unexcused absences attributed to her when she was notified first of her suspension and later of her termination.

The appellant's failure to pursue these remedial measures sinks her claim of pretext. Where, as here, an employee's concerns about the handling of her employment are not raised through reasonable (and reasonably neutral) processes made available by her employer and known to her, it is not appropriate for a court to second-guess the fairness of individual attendance determinations. Cf. Mesnick, 950 F.2d at 825 (explaining, in discrimination case brought under federal law, that courts do not "sit as super personnel departments").

To say more would be to paint the lily. We conclude that the appellant has not satisfied her burden of adducing evidence sufficient to show that JetBlue's proffered reason for her dismissal was pretextual. Accordingly, we agree with the district court that the appellant's handicap discrimination claims cannot survive summary judgment.

2. **Retaliation.** The district court also granted summary judgment as to the appellant's claim that JetBlue fired her in

retaliation for filing an MCAD complaint. See Miceli, 2018 WL 1524539, at *5. Once again, we employ the McDonnell Douglas burden-shifting framework as an analytic tool. See Mole v. Univ. of Mass., 814 N.E.2d 329, 338 (Mass. 2004).

Under applicable state law, see Mass. Gen. Laws ch. 151B, § 4(4), a prima facie case of retaliation requires the claimant to show that she engaged in protected activity; that she experienced some adverse action; and that the protected activity was causally connected to the adverse action, see Mole, 814 N.E.2d at 338-39. The first and second elements are clearly present: filing an MCAD complaint is protected activity and termination of employment is a classic example of an adverse employment action. See Clifton v. Mass. Bay Transp. Auth., 839 N.E.2d 314, 318 (Mass. 2005); Mole, 814 N.E2d at 338 n.13. The third element, though, is the sticking point.

In attempting to show the necessary causal connection between JetBlue's receipt of the MCAD complaint and its termination of her employment, the appellant relies exclusively on the timing and sequence of these two events. In the circumstances of this case, her reliance is misplaced.

To be sure, an inference of causation may be drawn "if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity." Mole, 814 N.E.2d at

339.  But when "problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation."  Id. at 340.

Our decision in Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36 (1st Cir. 2013), illustrates this point.  There, we held that a plaintiff alleging retaliation under Chapter 151B failed to show a sufficient causal connection at summary judgment because the plaintiff's supervisors had recommended his termination before he engaged in the protected activity.  See id. at 42.  Even though the employer's final decision to discharge the plaintiff did not occur until after the protected activity, we concluded that the plaintiff would have had to show that the outcome would have differed if not for the employer's knowledge of the protected activity.  See id.

The case at hand fits the Pearson model.  At the time that the appellant filed her MCAD complaint, she had already accrued twelve dependability points and, thus, was subject to suspension and termination review.  The appellant has offered nothing to suggest that, but for her protected activity, she would not have been terminated as a result of this review.  In the circumstances of this case, timing and sequence, without more, are not enough to ground an inference of causation.  It follows that

the district court did not err in granting summary judgment on the appellant's retaliation claim.

## B. **Motion to Amend.**

There is one loose end:  the appellant's challenge to the district court's denial of her motion to amend her complaint. We review orders granting or denying leave to amend for abuse of discretion.  See U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 191 (1st Cir. 2015).  Under this deferential standard, we will affirm "so long as the record evinces an arguably adequate basis for the court's decision."  Hatch v. Dep't of Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

Where, as here, leave to amend is sought more than twenty-one days after service of the complaint and the opposing party has not consented, a complaint may be amended only by leave of court.  See Fed. R. Civ. P. 15(a).  In general, leave should be freely given if, in the court's view, "justice so requires."  Id. 15(a)(2).  The standard may change, though, when — as in this case — the court has entered a scheduling order under Federal Rule of Civil Procedure 16(b), which contains, inter alia, a deadline for amendment of the pleadings.  In that event, a motion to amend filed outside the parameters set by the scheduling order will be granted "only upon a showing of 'good cause.'"  D'Agostino, 802 F.3d at 192 (quoting Rule 16(b)(4)); see Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563, 569 (1st Cir. 2012).  Such an elevated

standard makes perfect sense: without it, "scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient." D'Agostino, 802 F.3d at 194.

The "good cause" standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant. See O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004). In the decisional calculus, the moving party's diligence or lack of diligence serves as the "dominant criterion." Id. "[T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). Nor should a court be expected to look kindly upon a plaintiff who seeks belatedly to amend her complaint based on "information that [she] had or should have had from the outset of the case." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008).

With these principles in mind, we turn to the appellant's motion to amend. She filed that motion on July 17, 2017, seeking to add an FMLA claim approximately twelve months after she commenced her civil action and approximately five months after the Rule 16(b) deadline to amend had expired. JetBlue objected, and

the district court denied the motion. It concluded that the appellant had failed to demonstrate good cause for the delay, particularly given that she had referred to the possibility of an FMLA claim as early as her 2015 MCAD complaint.

The appellant sought reconsideration. She asserted that she had learned only during discovery that her termination was premised in part upon an August 4, 2015, UNA absence. Her new FMLA claim, she insisted, was spurred by this recently discovered evidence. The district court reaffirmed its earlier denial of leave to amend, concluding that the appellant had neither identified any newly discovered evidence nor called attention to any error in the court's prior reasoning.

Like the district court, we find the appellant's argument unpersuasive. Importantly, the MCAD complaint included allegations that JetBlue relied on miscoded FMLA absences in terminating the appellant's employment. Given those allegations, there was nothing revelatory in the "discovery" of the August 4, 2015, UNA absence. We hold, therefore, that the district court did not abuse its discretion in concluding that the appellant failed to show that new evidence justified the substantial delay in bringing her belated FMLA claim. That delay, in turn, lends weight to the district court's supportable conclusions that the appellant was not diligent in attempting to pursue her FMLA claim and, therefore, lacked "good cause." See O'Connell, 357 F.3d at

- 22 -

155 (affirming "good cause" denial of motion to amend complaint five months after scheduling order deadline); <u>Sosa</u> v. <u>Airprint Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) (affirming denial of motion to amend because plaintiff, who had relevant information "even before she filed suit," lacked "good cause").

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed.**