# United States Court of Appeals
## For the First Circuit
### For the First Circuit

No. 24-1736

LIBBY HEWES,

Plaintiff, Appellant,

v.

SAMANTHA PANGBURN, individually and in her official capacity as
Principal, Brewer High School; MORGAN SMALL, individually and in
her official capacity as coach/employee, Brewer School
Department; BREWER SCHOOL DEPARTMENT; PATRICK HEALY,
individually and in his official capacity as Owner and
Principal, Healy Chiropractic; HEALY CHIROPRACTIC, LLC; OFFICER
JOHN/JANE DOE, individually and in his/her official capacity as
officer, Brewer Police Department; GREGG PALMER, in his official
capacity as Superintendent, Brewer School Department; GRETCHEN
GARDINER,

Defendants, Appellees,

JACQUELINE PUSHARD; PHILLIP PUSHARD; MATTHEW PUSHARD; BENJAMIN
PUSHARD, in his personal and professional capacity as
employee/contractor/intern/agent, Brewer School Department,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]
[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Gelpí, Kayatta, Circuit Judges,
and Smith,* District Judge.

---

* Of the District of Rhode Island, sitting by designation.

Cory R. McKenna, with whom Ezra A.R. Willey, N. Laurence Willey, Jr., Willey Law Offices, and McKenna PLLC were on brief, for appellant.

Amy K. Olfene, with whom Melissa A. Hewey and Drummond Woodsum were on brief, for appellees Brewer School Department, Gregg Palmer, Gretchen Gardiner, Samantha Pangburn, and Morgan Small.

Jonathan R. Liberman, with whom Judy Metcalf Law was on brief, for appellees Patrick Healy and Healy Chiropractic, LLC.

John J. Wall, III, with whom Monaghan Leahy, LLP was on brief, for appellee Officer John/Jane Doe.

Brett Baber and Russell Johnson Beaupain on brief for the Women's and Children's Advocacy Project, the National Plan to End Interpersonal Violence Across the Lifespan, and the Nationale Organization for Men Against Sexism, amici curiae.

December 18, 2025

**GELPÍ**, <u>Circuit Judge</u>. Ten years ago, Plaintiff-Appellant Libby Hewes, then a thirteen-year-old middle school student in Brewer, Maine, was drawn into a sexual relationship by a twenty-year-old man, Defendant Benjamin Pushard, who worked as a coach in her school system. Over the course of approximately two years, Pushard sexually assaulted Hewes repeatedly.[1] Toward the end of that period, rumors about the unlawful relationship began circulating at Hewes's high school. Those rumors -- and the school's response to them -- are at the heart of this appeal.

Now an adult, Hewes sued numerous defendants -- including current and former employees of the Brewer School Department -- seeking relief for the sexual abuse she endured. She claims that school employees knew about the sexual abuse but failed to protect her, in violation of the U.S. Constitution, Title IX of the Education Amendments of 1972, Maine tort law, the Maine Constitution, and the Maine Civil Rights Act. The issue in this case has, since its inception, centered on Hewes's purported entitlement to hold multiple defendants liable for the harm she suffered.

---

[1] "In 2023, [Benjamin] Pushard pleaded guilty in state court to crimes including unlawful sexual contact and gross sexual assault for his involvement with Hewes." <u>Hewes</u> v. <u>Pangburn</u>, No. 1:21-cv-125-JDL, 2024 WL 1996159, at *1, n.2 (D. Me. May 5, 2024).

- 3 -

The U.S. District Court for the District of Maine rejected all of her claims at different stages of litigation. Now before us, Hewes cries foul. She contends, among other things, that the district court erred in dismissing four claims for failure to state a claim and in disposing of one claim at the summary judgment stage. She also appeals from the district court's rulings on motions pertaining to a police officer from the Brewer Police Department, whom Hewes unsuccessfully attempted to add to the lawsuit.

While we are mindful of the sensitive nature of Hewes's lawsuit, the law compels us to agree with the district court's disposition on all fronts. We therefore affirm the judgment below.

## I. BACKGROUND

### A. Facts

We set the stage by rehearsing the facts of the case. Because this appeal arises mainly from the district court's dismissal of Hewes's claims at the motion to dismiss stage, except where otherwise noted, "we recount the facts as alleged in the operative complaints." In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538, 545 (1st Cir. 2016) (citation modified).

In April 2014, Hewes was thirteen years old and struggling with her mental health. She communicated daily about her struggles with Defendant-Appellee Morgan Small, a coach of the junior varsity softball team at Brewer High School. During these

- 4 -

conversations, Small told Hewes about someone she previously dated, Defendant Benjamin Pushard, then a trainee, intern, employee, agent, or contractor with the Brewer School Department through Defendant-Appellee Healy Chiropractic, LLC. Though Pushard was not a mental health therapist, Small told Hewes that Pushard was a "helpful and kind person and could possibly help" Hewes cope with her mental health struggles. So, following Small's advice, Hewes befriended Pushard on the social media application Snapchat.

At the inception, Hewes communicated with Pushard about her mental health. Over time, however, their conversations shifted to flirtation. A month after their initial conversation, Hewes and Pushard met in person for the first time. Three months later, in April 2015, Pushard, then twenty years old, engaged in sexual contact with Hewes -- who was still only thirteen years old. The sexual contact continued for two years.

During those two years, in the summer of 2016, Pushard sexually assaulted Hewes in the parking lot of the local Conservation Club after dark. An officer from the Brewer Police Department, Officer Doe, was on shift patrolling the Conservation Club and encountered them in the parking lot moments after the assault. Officer Doe asked Pushard why he, an adult man, was with a female minor. Pushard informed Officer Doe that Hewes's parents knew where she was and that they were just leaving the Conservation

Club.  Officer Doe then bid them good night and left without taking any further action.

Afraid of going to prison, Pushard asked Hewes to lie about their relationship for almost two years.  Hewes, as a result, kept their relationship a secret to protect him.  But in April 2017, a month before Hewes ended the relationship, rumors about her involvement with Pushard were circulating Brewer High School, where she was a sophomore.  One day, a classmate told Hewes to "go f*** [her] 22-year-old boyfriend."  Upset and afraid that Pushard would get in trouble, Hewes immediately went to speak with the high school principal, Defendant-Appellee Samantha Pangburn.

During the meeting with Pangburn, Hewes expressed concern about the comment and explained that it was false.  She also said that she did not know Pushard well, and that she did not know why her classmates were spreading rumors.  As shown by the summary judgment record, Pangburn believed Hewes, partly because Hewes said she liked a classmate and did not want him to think she had a boyfriend.  Hewes also asked Pangburn if she had heard the rumor, to which Pangburn replied she had not.  Pangburn said that she would "keep an ear out," and if she heard any rumors she would "squash" them.

Pangburn followed up on her conversation with Hewes by discussing it with the Athletic Director's secretary.  The secretary knew Pushard personally and said he would never do

- 6 -

anything like what the rumors claimed. After this conversation, Pangburn took no further action and she did not notify Defendant-Appellee Gregg Palmer, the Superintendent of the Brewer School Department, or Defendant-Appellee Gretchen Gardiner, the Title IX/Affirmative Action Officer of the Brewer School Department, about her conversation with Hewes. In May 2017, Hewes ended her relationship with Pushard. Four years later, in May 2021, she filed this lawsuit.

## B. Procedural History

Hewes sued several employees of the Brewer School District, including (1) Superintendent Palmer, (2) Gardiner, the Title IX/Affirmative Action Officer, (3) Principal Pangburn, and (4) Coach Small (collectively, "School Defendants"). She also sued the Brewer School Department and Officer Doe from the Brewer Police Department.[2]

---

[2] Additionally, Hewes sued Benjamin Pushard, Jacqueline Pushard, Phillip Pushard, Matthew Pushard, Patrick Healy, and Healy Chiropractic, LLC. Hewes and Benjamin Pushard entered into a *Pierringer* release, which included settlement terms and a stipulated judgment. The *Pierringer* release also released Jacqueline Pushard, Phillip Pushard, and Matthew Pushard, who were dismissed from the suit pursuant to Federal Rule of Civil Procedure 41(a)(2).

As to the remaining defendants, Patrick Healy and Healy Chiropractic, Hewes did not develop any argument challenging their dismissal by the district court. Ordinarily, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). In her reply brief, Hewes contends that she did not waive her arguments against Patrick Healy or Healy Chiropractic. She points to pages 2, 6, 14, and 28 of her opening

Hewes's amended complaint brings claims under 42 U.S.C. § 1983 (Counts I-III), Title IX of the Education Amendments of 1972 (Counts VII-X), Maine tort law (Counts IV-VI, XI-XIII, XVII), the Maine Constitution (Counts XIV, XV, and XVIII), and the Maine Civil Rights Act (Count XVI). At the pleading stage, the district court dismissed many of these claims and several defendants. See Hewes v. Pangburn, No. 1:21-cv-125-JDL, 2022 WL 823924, at *1 (D. Me. Mar. 18, 2022). The surviving claims proceeded through discovery, but the district court disposed of them at summary judgment. See Hewes v. Pangburn, 2024 WL 1996159, at *1. Hewes

_____

brief. Page 2 "lists as an issue whether it was error for the court to grant summary judgment to the Healy Defendants," while page 6 "outlines that the district court granted" the Healy Defendants' motion for summary judgment. On page 14, the brief addresses the district court's determination "that there was a lack of evidence establishing Pushard was associated with the Brewer School Department and/or the Healy Defendants as a volunteer and/or employee in 2017." And on page 28, Hewes states that "Pushard was at all times working for the Brewer School Department as either a student trainee, employee, agent and/or contractor, directly or indirectly through Healy Chiropractic and or Patrick Healy."

These statements are not sufficient to escape the application of our well-established waiver principles. See Zannino, 895 F.2d at 17 ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."); see also Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 96 (1st Cir. 2016) (finding waiver where appellant's opening brief argues that the district court erred in dismissing a claim, but "its appellate papers never explain how this is so"). As such, we deem the arguments as to Patrick Healy and Healy Chiropractic waived.

- 8 -

now appeals from four orders and judgments of the district court.[3] We discuss the remaining procedural history only as it pertains to the appealed and properly argued claims against the School Defendants, the Brewer School Department, and Officer Doe that are before us.

**1. The School Defendants and the Brewer School Department**

Hewes brought seventeen counts (Counts I-X, and XII-XVIII) against the School Defendants and the Brewer School Department, and one count (Count XI) against the same group, excluding Small. They moved to dismiss all claims brought against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motions in part and denied the motions in part.[4]

Three claims survived the motion to dismiss stage: (1) a § 1983 state-created danger claim against Pangburn for violation of Hewes's autonomy and bodily integrity (Count I); (2) a Title IX

---

[3] Hewes appeals two orders on motions to dismiss, one order on a motion for enlargement of time to complete service, one order on a motion to amend the complaint, and one order on motions for summary judgment.

[4] The Court granted the motions on Count I as to Small, Counts II-XVIII as to the School Defendants, and Counts I-VI, VIII-IX, and XI-XVIII as to the Brewer School Department. It denied the motions on Count I as to Pangburn, and on Counts VII and X as to the Brewer School Department. Hewes also named Palmer and Gardiner as defendants to the suit. Because she sued Palmer and Gardiner in their professional capacities, the district court construed the claims against them as against the Brewer School Department. See generally, Hewes v. Pangburn, 2022 WL 823924.

deliberate indifference claim against the Brewer School Department (Count VII); and (3) a Title IX retaliation claim against the Brewer School Department (Count X).[5]  After discovery, Pangburn and the Brewer School Department filed a joint motion for summary judgment on all three claims.  The district court granted the motion.

### 2. Officer Doe

Hewes brought claims in Counts I-III, V, and XII-XVII against the officer who encountered her with Pushard in the parking lot of the Conservation Club.  Because she did not know the officer's identity, she named him as Officer Doe in the amended complaint.  On July 12, 2021, two months after Hewes filed the lawsuit, Officer Doe moved to dismiss the claims against him for lack of personal jurisdiction due to insufficient service of process.  He argued that Hewes failed to effectuate service of process consistent with either Federal Rule of Civil Procedure 4(e) or with Maine Rule of Civil Procedure 4(d)(1).

On July 30, 2021, Hewes filed a motion to extend and enlarge the time to complete service ("motion to extend and enlarge"), asking for another 90 days to identify Officer Doe and serve him with process.  On August 30, 2021, the district court

---

[5] We are aware that this and other district court orders involved additional defendants, including Patrick Healy and Healy Chiropractic, LLC.  But they are not at issue in this appeal, see supra note 2, so we need not discuss them.

addressed both motions in a single order. It granted Officer Doe's motion to dismiss for lack of personal jurisdiction and denied Hewes's motion to extend and enlarge because she had neither identified nor properly served Officer Doe. But the district court noted that if Hewes identified Officer Doe during discovery, she could "then seek to add him/her as a defendant at that time." Hewes v. Pushard, No. 1:21-cv-125-DBH, 2021 WL 3863337, at *1 (D. Me. Aug. 30, 2021).

After the district court ruled on the motions to dismiss, a magistrate judge set a deadline of June 21, 2022 to amend the pleadings or join additional parties. That deadline was later extended to October 5, 2022. In April 2023 -- almost two years after filing the lawsuit, and six months after the extended deadline to join a party -- Hewes moved to amend the complaint again, alleging she had recently identified Officer Doe as Officer Ryan Freeman of the Brewer Police Department. She argued that leave to amend should be granted because the Brewer Police Department and Officer Freeman knew Pushard and his family and intentionally hid the identity of Officer Freeman.

The district court denied Hewes's motion to amend the complaint. It reasoned that the "deadline set by the Scheduling Order to amend the pleadings ha[d] long since expired, and the parties [were] on the precipice of summary judgment motions and briefing." Hewes v. Pangburn, No. 1:21-cv-125-JDL, 2023 WL

- 11 -

3550702, at *3 (D. Me. May 18, 2023). For that reason, the district court said that allowing Hewes to amend the complaint "would invariably delay the completion of this case by requiring the reopening of discovery and, possibly, permitting a round of preliminary motions before the case would again be in a position to be considered under Fed. R. Civ. P. 56." Id. Thus, "even though there is no indication that Hewes engaged in dilatory conduct, allowing [her] to amend her Complaint at this juncture would unjustifiably delay the matter and unduly prejudice the Defendants." Id.

## II. DISCUSSION

Hewes challenges several of the district court's decisions on appeal. First, she claims the district court erred by granting summary judgment on the Title IX claim that she brought under a theory of deliberate indifference (Count VII). Second, she asserts the district court erred in dismissing her § 1983 claims for violation of her right to autonomy and bodily integrity (Count I), due process (Count II), and equal protection (Count III), as well as her Title IX claim for intentional sex-based discrimination (Count VIII) under Rule 12(b)(6). Third, Hewes challenges the district court's decisions to grant Officer Doe's motion to dismiss and deny her motion to extend and enlarge. Finally, she argues that the district court erred in denying her motion to amend the complaint.

We begin by reviewing Hewes's § 1983 claims (Counts I-III), which were dismissed at the pleading stage. We then turn to Hewes's Title IX deliberate indifference claim (Count VII) and intentional discrimination claim (Count VIII), which were disposed of at summary judgment and at the pleading stage, respectively. We conclude by addressing the district court's decisions on Hewes's attempts to serve Officer Doe and amend her complaint.

## A. The § 1983 Claims

As stated above, the district court dismissed Hewes's § 1983 claims under Federal Rule of Civil Procedure 12(b)(6). This Court reviews a district court's grant of a motion to dismiss de novo. Wadsworth v. Nguyen, 129 F.4th 38, 61 (1st Cir. 2025) (citation omitted). In assessing whether a complaint can withstand a Rule 12(b)(6) motion, we "accept as true all well-pleaded facts, indulging all reasonable inferences in [the plaintiff's] favor." Lavigne v. Great Salt Bay Cmty. Sch. Bd., 146 F.4th 115, 123 (1st Cir. 2025) (citation modified).

"The propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2)." Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76, 80 (1st Cir. 2025) (citation modified). Rule 8(a)(2), in turn, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (citation modified). Under

- 13 -

this pleading standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff need not include "detailed factual allegations," but Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (citation modified).

"Federal law creates a cause of action under 42 U.S.C. § 1983, which allows a plaintiff to sue persons acting under color of state law for constitutional transgressions or other violations of federal law." Martin v. Somerset Cnty., 86 F.4th 938, 943 (1st Cir. 2023); see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997). To prevail on a § 1983 claim, the plaintiff must demonstrate (1) conduct by a person, (2) acting under color of state law, (3) who caused (4) a deprivation of the plaintiff's federally protected rights. See West v. Atkins, 487 U.S. 42, 48 (1988). The element of causation is "similar to that of ordinary tort law." Maldonado Santiago v. Velazquez Garcia,

- 14 -

821 F.2d 822, 831 (1st Cir. 1987). This requirement "restricts . . . liability to those whose conduct, beyond falling within the infinite causal web leading to an injury, was a legally significant cause." Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).

When pursuing a § 1983 claim against a municipality, municipal entity, or municipal employee in their official capacity, as here, the plaintiff must also show that the deprivation of the federally protected right resulted from the enforcement of a municipal policy, practice, or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 694 (1978); see also Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257-58 (2009) ("A plaintiff stating a similar claim via § 1983 . . . [against] a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice.").

Hewes appeals from the district court's dismissal of three claims under § 1983 pursuant to Rule 12(b)(6): (1) the autonomy and bodily injury claim in Count I; (2) the due process claim in Count II; and (3) the equal protection claim in Count III. We first address Counts I and II, as both claims sound under the Due Process Clause, and then turn to Count III.

- 15 -

### 1. The Due Process Claims (Counts I-II)

Counts I and II fall under the Due Process Clause of the Fourteenth Amendment.[6]  Because Hewes points to identical factual allegations to support these two claims in her appellate briefing, we analyze them together.  The Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To establish a due process claim, Hewes must not only show a deprivation of a protected interest in life, liberty, or property, but also demonstrate that the deprivation "was caused by governmental conduct."  Doe v. City of Boston, 145 F.4th 142, 150 (1st Cir. 2025) (citation omitted).

Hewes claims that she was deprived of her substantive due process right of bodily integrity.  This right is well-established.  Wadsworth, 129 F.4th at 51.  The dispute here

---

[6] Count I asserts a right under the Fourth and Fourteenth Amendments to autonomy and bodily integrity.  However, the district court analyzed this claim solely as a Fourteenth Amendment claim, noting that the amended complaint alleged no facts regarding an unlawful search or seizure.  The district court also noted that Hewes provided no support for "her argument that the Fourth Amendment provides a right to bodily autonomy and integrity."  Hewes v. Pangburn, 2022 WL 823924, at *4.  Because Hewes does not argue that this conclusion was an error or discuss the Fourth Amendment at all in her brief, we follow the district court's lead in treating Count I as a due process claim only.
Count II is labeled as a due process claim, but it is not clear whether it is a procedural or substantive due process claim.  If it is a substantive due process claim, the amended complaint does not explain what fundamental right is at issue.

is whether any governmental conduct caused a deprivation of this protected right. Although Hewes initially brought the autonomy and bodily injury claim against multiple defendants, she only challenges the district court's dismissal as to Small and the Brewer School Department. In doing so, she cabins her challenge under two theories: one applicable to Small, and the other applicable to the Brewer School Department, even though her complaint does not so specify. As to the Brewer School Department, Hewes argues that the district court incorrectly dismissed Count I under the failure to train or supervise doctrine.[7] As to Small,

_____

[7] In her brief, Hewes initially asserts that the district court dismissed her failure to train or supervise claim against both the Brewer School Department and Small because "in the court's view," she "failed to allege facts to support a plausible failure-to-train-and-supervise claim against the [Brewer School] Department . . . ." Hewes later says that she alleged "facts to support a plausible failure-to-train-and-supervise claim against the Department or Pangburn, contrary to the district court's findings." But Hewes did not raise a failure to train or supervise claim against Pangburn before the district court, so it is waived. See Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006) ("[T]heories not squarely and timely raised in the trial court cannot be pursued for the first time on appeal."). And since we treat Counts I and II as duplicative, we also treat Count II against Pangburn as waived.

If Hewes intended to name Small rather than Pangburn, she misreads the record. The district court's dismissal of the failure to train or supervise claim applied only against the Brewer School Department, not against Small. When the district court dismissed Count I against Small, it did so only under the state-created danger theory, not under the failure to train or supervise theory. This is so for one simple reason: the failure to train or supervise claim is inapplicable against employees with no supervisory or training responsibilities. The amended complaint simply alleges that Small coached the Brewer High School's junior varsity softball team. Because Small did not supervise or train

- 17 -

Hewes contends that the district court erred in dismissing the same claim under the state-created danger theory. We address each contention in turn, explaining along the way the district court's rationale for dismissing each appealed count.

### a. The Failure to Train or Supervise Claim

Hewes challenges the district court's dismissal of her autonomy and bodily injury claim under the theory of failure to train or supervise against the Brewer School Department. She rests her contention on the grounds that the amended complaint alleges the Brewer School Department failed to fulfill its obligations under its own Affirmative Action Plan, which lays out, among other things, its policies on sexual harassment of students, including the definition of sexual harassment and the complaint and investigation process.[8]

In dismissing Hewes's failure to train or supervise claim, the district court held that her factual allegations were conclusory and vague and thus could not support a plausible claim.

---

school employees, the failure to train or supervise doctrine cannot be applied against her.

We therefore limit our discussion of the district court's dismissal of the failure to train claim as applied to the Brewer School Department only.

[8] "On a motion to dismiss, we may also consider 'documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice.'" Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020) (quoting Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014)).

- 18 -

The district court further concluded that the amended complaint did not allege facts indicating that the Brewer School Department failed to adequately train its employees. We agree with the district court.

As discussed above, a municipal entity is only liable under § 1983 when a plaintiff's injury was caused by a municipality's policy, practice, or custom. See Monell, 436 U.S. at 694. Within these constraints, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id.; see also Jones v. City of Boston, 752 F.3d 38, 59 (1st Cir. 2014) (stating that the "failure to train theory offers a way for plaintiffs to hold a municipality liable under 42 U.S.C. § 1983 for the acts of its employees.").

Under this doctrine, the plaintiff must first identify a constitutional violation and then show "that the violation was the direct result of poor training or supervision of municipal employees." Jones, 752 F.3d at 59 (citation modified). But it is not enough "to prove that an injury or accident could have been avoided if [a municipal employee] had had better or more training,

- 19 -

sufficient to equip him to avoid the particular injury-causing conduct." City of Canton v. Harris, 489 U.S. 378, 391 (1989). The plaintiff must also show "that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011). This deliberate indifference standard is "stringent." Bannon v. Godin, 99 F.4th 63, 88 (1st Cir. 2024). The knowledge necessary to show deliberate indifference "can be imputed to a municipality through a pattern of prior constitutional violations" or, "in very rare cases," from a single constitutional violation if "the violation of a federal right is a highly predictable consequence of a failure to equip governmental actors with specific tools to handle recurring situations." Wadsworth, 129 F.4th at 68 (citation modified).

Even accepting Hewes's allegations that the Brewer School Department did not disseminate required information on sexual harassment to employees and did not implement the Affirmative Action Plan, her failure to train or supervise claim fails because Hewes has not alleged any facts suggesting deliberate indifference. She has not alleged that there was a pattern of prior cases in which school employees sexually harassed students, other employees failed to report such abuse, or administrators failed to investigate such reports. Nor has she "explained how

- 20 -

these circumstances fit within the rare category where a plaintiff need not point to a pattern of prior violations." Id. at 69. Even if the Brewer School Department had no Affirmative Action Plan at all, it does not seem that this would obviously lead to sexual harassment of students by school employees or cause other staff to fail to report or respond to such abuse. See id. It is implausible to think that absent express direction by the school, any staff would think it was unobjectionable for an adult staff member to have sex with a young teenager. Cf. Connick, 563 U.S. at 66 (noting the existing knowledge of prosecutors meant that "recurring constitutional violations were not the obvious consequence of failing to provide . . . training about how to obey that law." (citation modified)). We thus affirm the district court's dismissal of Hewes's autonomy and bodily injury claim.

And, since Hewes repeats the same arguments in challenging the district court's dismissal of her broad due process claim in Count II, we need not belabor the obvious. For the same reasons, we dismiss her due process claim.[9]

b. The State-Created Danger Claim

The district court dismissed the state-created danger claim against Small because Hewes did "not provide any factual

_____

[9] See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 47 (1st Cir. 2003) (affirming dismissal of multiple claims on the same grounds).

allegation to establish a nexus between Small's employment with the Department and Pushard's alleged abuse of Hewes, which is necessary to show that Small acted under the color of law." Hewes v. Pangburn, 2022 WL 823924, at *4. The district court reasoned that the complaint simply alleged that Small and Hewes had a personal relationship unconnected to Small's role as a coach with the Brewer School Department. Hewes contends, however, that there was a nexus between Small's employment and Pushard's sexual abuse because Small was Hewes's coach at school, Small advised Hewes to seek mental health advice from Pushard, and this connection was the genesis of the sexual abuse.

Hewes further argues that Small should be held liable because she had direct oversight of students involved with the Brewer School Department, she was acting under color of state law, and because, based "on Small's insistence," Hewes "became friends with Pushard." Hewes presses that Small knew of Pushard's sexual abuse because he gave Hewes a ride home after a softball practice and the team, including Small, saw Hewes get in the car with him. Yet, Small did not report it to school officials. Hewes asserts that, construing the facts in the light most favorable to her, the complaint alleged sufficient facts to establish a nexus between Small's employment and the sexual abuse.

We reject her contentions and agree with the district court's decision to dismiss Count I against Small, though for different reasons.[10]

> While the Supreme Court has said that in general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," it has also suggested that when the state creates the danger to an individual, an affirmative duty to protect might arise.

Irish v. Fowler, 979 F.3d 65, 73 (1st Cir. 2020) (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). Courts of appeal describe this principle as the state-created danger doctrine.[11]  Id.

> [T]o state such a claim, a plaintiff must show: (1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff; (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public; (3) that the act or acts caused the plaintiff's harm; and (4) that the state actor's conduct, when viewed in total, shocks the conscience.

Doe v. City of Boston, 145 F.4th at 151.  In confronting allegations under the state-created danger theory, "courts must be careful to distinguish between conventional torts and

---

[10] In so doing, we assume -- without deciding -- that Small was acting under color of state law during her interactions with Hewes.

[11] This Court first recognized the state-created danger theory in 2020 in Irish v. Fowler, joining nine other federal circuits.  979 F.3d at 67.

constitutional violations, as well as between state inaction and action." Rivera v. Rhode Island, 402 F.3d 27, 36 (1st Cir. 2005) (quoting Soto v. Flores, 103 F.3d 1056, 1064 (1st Cir. 1997)).

In this case, the amended complaint alleges sufficient facts to satisfy the first two elements of the state-created danger claim. But Hewes failed to allege facts showing that Small's conduct proximately caused Hewes's sexual abuse. Moreover, the factual allegations in the amended complaint fall short of demonstrating that Small's conduct shocks the conscience.

We begin with the third element, proximate causation. To make out a state-created danger claim, a "plaintiff must show that the defendant's actions were both the but-for and proximate cause of his or her injury." Cohen ex rel. Cohen v. City of Portland, 110 F.4th 400, 406-07 (1st Cir. 2024). A § 1983 defendant may be held liable for "those consequences attributable to reasonably foreseeable intervening forces, including acts of third parties." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) (citation modified). The facts underlying Hewes's autonomy and bodily injury claim do not suggest that Small should have reasonably foreseen that, because she encouraged Hewes to reach out to Pushard, he would sexually abuse Hewes. Though Small's advice was the genesis of Pushard's abuse of Hewes, the amended complaint did not allege facts plausibly demonstrating

that, at the time, Small knew her advice would create a substantial danger to Hewes.

We turn to the fourth element of the state-created danger claim: that is, whether Small's conduct shocks the conscience. To shock the conscience, the state action must be both egregious and outrageous. See Irish v. Maine, 849 F.3d 521, 526 (1st Cir. 2017). "[C]onduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'" Maldonado v. Fontanes, 568 F.3d 263, 273 (1st Cir. 2009) (quoting Chavez v. Martinez, 538 U.S. 760, 775 (2003)). The burden to show such conduct "is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (citation modified).

"Where officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger." Irish v. Fowler, 979 F.3d at 75. "At a bare minimum," deliberate indifference that shocks the conscience requires the plaintiff to allege that the "the defendant actually knew of a substantial risk

of serious harm and disregarded that risk."  Id. (citation modified).

Here, the amended complaint alleges that "Small would periodically talk [with Hewes] about a person she dated in high school and went to prom with" and for whom she still had feelings. That person was Pushard.  Because Small believed that he was a good person to discuss mental health with, she encouraged Hewes to talk to him.  This conduct does not shock the conscience.

"At the very worst, the complaint alleges facts that might show that [Small] acted negligently . . . . But it is well-settled that mere negligence is insufficient to maintain a claim of substantive due process violation." Cohen ex rel. Cohen, 110 F.4th at 405 (citation modified). Instead, we must assess whether Small "actually knew of a substantial risk" that Pushard would sexually abuse Hewes but "disregarded that risk." Irish v. Fowler, 979 F.3d at 75.  The facts do not so indicate.  The complaint does not allege that Small either knew Pushard sexually abused minors or had any suspicion of the potential for an abusive relationship.  To the contrary, the amended complaint states that Small believed "Pushard was a really helpful and kind person and could possibly help Libby [Hewes] with her mental health."  Thus, the district court did not err in dismissing Counts I and II against Small at the pleading stage.

## 2. The Equal Protection Claim (Count III)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As such, it requires that "all persons similarly situated . . . be treated alike." Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). To bring a standard equal protection claim such as this, a plaintiff must "establish that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations." Wadsworth, 129 F.4th at 64 (citation modified). "It is well established that sex discrimination violates the Equal Protection Clause." Id. at 54.

In evaluating Hewes's equal protection claim, the district court noted the sole factual allegation was that "Defendants knew that [Hewes] was a minor female student, and not capable of making informed choices, and that she was being coerced and/or threatened by Defendant B. Pushard, which a minor female student, required protection therefrom." Hewes v. Pangburn, 2022 WL 823924, at *7. The district court then concluded that this single allegation was not sufficient to state an equal protection claim and dismissed it against all Defendants. On appeal, Hewes takes aim at the district court's dismissal as to the Brewer School

Department, Pangburn, and Small, claiming yet again that the Brewer School Department failed to disseminate and implement its own Affirmative Action Plan.  This challenge fails for two reasons.

First, Hewes does not allege facts "that would permit a court or jury to infer that [the Brewer School Department, Pangburn, and Small] w[ere] motivated by an intent to discriminate against [her] based on her sex or that [they] treated her any differently than [they] would another student." Wadsworth, 129 F.4th at 64.  The amended complaint does not include any "allegations whatsoever relevant to [their] motivation[s] or to [their] interactions with any other students." Id.  Hewes merely recites the elements of an equal protection claim, which is not enough to survive a motion to dismiss. See Iqbal, 556 U.S. at 678 (stating that a "formulaic recitation of the elements of a cause of action" does not suffice to state a claim upon which relief can be granted).

Second, as already explained, the amended complaint failed to allege sufficient facts demonstrating that Hewes's sexual abuse resulted from a policy or custom of failure to train or supervise by the Brewer School Department.  And a plaintiff who asserts a claim "via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246,

- 28 -

257-58 (2009) (citing Monell, 436 U.S. at 694).  Hence, we must affirm the district court's dismissal of Hewes's equal protection claim against the Brewer School Department, Pangburn, and Small.

### B. The Title IX Claims

Title IX forbids any educational institution that receives federal funding from discriminating against any person on the basis of sex.  20 U.S.C. § 1681(a).  The Supreme Court has recognized that Title IX confers "a private right of action under which an aggrieved party may seek money damages against an educational institution." M.L. ex rel. D.L. v. Concord Sch. Dist., 86 F.4th 501, 510 (1st Cir. 2023).  Sexual harassment or abuse of a student by a teacher is sex discrimination.  See Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75 (1992) ("When a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminates' on the basis of sex. We believe the same rule should apply when a teacher sexually harasses and abuses a student." (citation modified)).  For "[n]o one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 292 (1998).

Hewes appealed the district court's decisions on two Title IX claims: (1) the intentional sex-based discrimination claim, which the district court dismissed at the pleading stage; and (2) the deliberate indifference claim, disposed of at the

- 29 -

summary judgment stage.  We begin with the deliberate indifference claim.

### 1. The Deliberate Indifference Claim (Count VII)

"This court 'review[s] a district court's grant or denial of summary judgment de novo, examining the record in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor.'"  Quintana-Dieppa v. Dep't of the Army, 130 F.4th 1, 7 (1st Cir. 2025) (quoting Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 502-03 (1st Cir. 2022)).  The law requires a party moving for summary judgment to demonstrate "that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law."  Dusel, 52 F.4th at 503 (citation modified).  Material facts are those facts that have the "potential to affect the outcome of the suit under the applicable law."  Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (citation omitted).  Disputes, on the other hand, are "genuine when the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party."  Quintana-Dieppa, 130 F.4th at 7 (citation modified).

To succeed on a Title IX claim under a deliberate indifference theory, a plaintiff must establish five elements:

> (1) he or she was subject to severe, pervasive, and objectively offensive sexual harassment; (2) the harassment caused the plaintiff to be deprived of educational opportunities or benefits; (3) the funding

- 30 -

recipient was aware of such harassment; (4) the harassment occurred in the funding recipient's programs or activities; and (5) the funding recipient's response, or lack thereof, to the harassment was clearly unreasonable.

Doe v. Brown Univ., 896 F.3d 127, 130 (1st Cir. 2018) (citation modified). In the landmark case of Gebser v. Lago Vista Independent School District, the Supreme Court defined awareness of sexual harassment as "actual knowledge." 524 U.S. at 290; see also Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (stating that awareness of sexual harassment "demands that a funding recipient be shown to have had actual knowledge of the harassment."). "This stringent requirement applies to Title IX claims to eliminate any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." Santiago, 655 F.3d at 73 (citation modified). While "awareness" and "actual knowledge" of a fact would seem to require more than a showing that the defendant "ought to know," a panel of this court recently held that a school has actual knowledge of harassment "if a reasonable jury could conclude that a school 'ought to' know that harassment is occurring -- if [the school] had information that conveyed a substantial risk of ongoing harassment . . . ." Wadsworth, 129 F.4th at 70. Whether certain information or circumstance provide

notice of substantial risk of ongoing harassment is based on "the totality of circumstances."  Id. at 71.

After discovery, the district court disposed of Hewes's deliberate indifference claim at summary judgment, holding that no facts in the record show "that Pangburn or any 'appropriate person' had actual knowledge of the sexual assaults and harassment that Hewes endured."  Hewes v. Pangburn, 2024 WL 1996159, at *12.  It reasoned that "the summary judgment record reflects only that Pangburn was aware of a rumor in April 2017 that Hewes was having sexual contact with an adult man, which is not tantamount to actual knowledge of the same[,]" and that "her lack of actual knowledge is the death knell to Hewes's Title IX claim."  Id.

Hewes challenges that decision, claiming there is a genuine issue of material fact as to whether Pangburn had actual knowledge of Hewes's sexual abuse.  Hewes contends that Pangburn was clearly "aware of information" that Hewes was being sexually exploited by an adult because Hewes "report[ed] a rumor of her own sexual victimization by an adult," which should have been understood by Pangburn as a report of ongoing sexual abuse, thereby constituting actual knowledge.  She argues that labeling the information as a "rumor" does not change the analytical calculus because, as her expert testified, "abused children often disavow their own abuse."  Hewes also argues that the denial of the rumor was not the only information school officials had about her abuse:

she points to the time two softball coaches saw Pushard give her a ride home and to the fact that rumors she had a twenty-two-year-old boyfriend were prevalent amongst the student body.

We are not persuaded that all of this -- the rumor, Hewes's denial of it, and the ride home -- is enough to suggest that Pangburn and the Brewer School Department "had information that conveyed a substantial risk of ongoing harassment." Wadsworth, 129 F.4th at 70. It is illuminating to compare this case with the situation in Wadsworth.

In that case, the plaintiff alleged she suffered sexual harassment by the school principal and brought, among other claims, a Title IX deliberate indifference claim against the school district. Id. at 48-49. The school's assistant principals:

> . . . were aware of the [the principal's]
> habit of pulling [the plaintiff] out of class,
> that he referred to her as "cupcake," that she
> was working for him to pay off the car he gave
> her, that he wanted to invite her to live with
> him, and that they communicated by text
> message.

Id. at 71. They were also aware that "several teachers had expressed concern with how often the [plaintiff and the school principal] met as it caused [the plaintiff] to miss class." Id. at 47. Considering these facts, this Court held that the school administrators had actual knowledge of the sexual harassment

- 33 -

because they had "information that conveyed a substantial risk of ongoing harassment."  Id. at 70.

Hewes contends that our holding in Wadsworth squarely applies to her case.  Not so.  In Wadsworth, unlike here, school administrators personally witnessed highly inappropriate conduct such that sexual harassment was an obvious logical inference.  See id. at 71.  The facts here tell a different story.  In this case, Pangburn only knew of a rumor: a rumor that she learned from Hewes herself, and which Hewes denied because, she told Pangburn, she liked one of her classmates and did not want him to hear it.  As to the ride home from softball practice and the rumors circulating among students, Hewes does not allege that Pangburn was ever told of the incident, or of the rumors (beyond Hewes's own report).  Unlike the school administrators in Wadsworth, Pangburn had not directly observed any inappropriate conduct by Pushard.  Nor was the denied rumor reinforced by any other reports or indicia of reliability.  We cannot infer, without more, that Hewes asking Pangburn to quash a denied rumor signaled, under the totality of the circumstances, that there was a substantial risk of ongoing harassment.[12]

---

[12] To be sure, we recognize the traumatic events underlying this case. While a negligence or constructive knowledge standard could perhaps provide broader protection to minors, it is not the judiciary's role to expand the scope of Title IX.  That is a legislative matter.  See North Haven Bd. of Ed. v. Bell, 456 U.S. 512, 535 n.26 (1982) ("These policy considerations were for

- 34 -

We are aware that children who suffer sexual abuse often deny it. Such denials, therefore, may not belie "suspicion" of ongoing sexual abuse or harassment. But suspicion does not constitute actual knowledge. See Suspicion, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/suspicion (defining suspicion as "an instance of suspecting something wrong without proof or on slight evidence") [https://perma.cc/BX6Y-YX2G]. As a result, we decline to make the inferential leap that a single rumor of sexual abuse which the minor flatly denies, without more, conveys a substantial risk that the minor is experiencing sexual abuse.

We thus affirm the district court's decision granting the Brewer School Department's motion for summary judgment on Hewes's deliberate indifference claim.

### 2. The Intentional Sex-Based Discrimination Claim (Count VIII)

In dismissing Hewes's intentional discrimination claim at the pleading stage, the district court reasoned that the amended complaint alleged "largely conclusory and, at times, contradictory contentions . . . [that], absent factual support, [did] not plausibly support a claim of intentional sex-based discrimination." Hewes v. Pangburn, 2022 WL 823924, at *8. On

_____

Congress to weigh, and we are not free to ignore the language and history of Title IX even were we to disagree with the legislative choice.").

appeal, Hewes submits that the amended complaint "alleged sufficient facts to support a claim that the [Brewer School Department] engaged in intentional conduct that violated Title IX." However, Hewes appears to merely parrot her Title IX deliberate indifference claim, saying that it "has identical elements to the [intentional sex-based discrimination] claim at issue here" and that Pangburn and the Brewer School Department "engaged in intentional conduct" because they had "actual knowledge of the harassment and deliberate indifference in response to that knowledge." We have already concluded that Hewes's deliberate indifference claim was rightfully disposed of at summary judgment, and it cannot survive here merely because she has put a different label on it. As explained above, Pangburn had no actual knowledge of Hewes's sexual abuse. Therefore, we also affirm the district court's order dismissing Hewes's intentional discrimination claim.

## C. The Dismissal of Officer Doe as a Defendant

Hewes sued Officer Doe in his personal and professional capacity based on the occurrence when he found Pushard with Hewes after dark at the Conservation Club. On appeal, Hewes challenges the district court's decisions regarding Officer Doe on three fronts. First, she claims that the district court erred in dismissing the complaint against Officer Doe for lack of personal jurisdiction. Second, she argues that the district court

erroneously failed to grant her motion to extend and enlarge the amount of time to serve Officer Doe. Third, she contends that the district court erred in denying her motion to amend the complaint after she identified Officer Doe. We address each argument in turn.

### 1. Dismissal for Insufficient Service of Process

We generally review de novo a district court's decision when it "dismisses a case for lack of personal jurisdiction," Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 209 (1st Cir. 2023) (citation omitted), but we review "for abuse of discretion a dismissal for insufficient service of process." Crossetti v. Cargill, Inc., 924 F.3d 1, 3 (1st Cir. 2019) (citation omitted). Hewes asserts that the district court erred in dismissing her complaint against Officer Doe because she served Sergeant Nickerson, "who is identified in the return of service as a person designated by law to accept service of process on behalf of [the] Brewer Police Department." She thus maintains that "service was properly completed." We disagree.

A plaintiff suing an individual in an official capacity must effectuate service of process according to "the rule applicable to serving individuals." Caisse v. DuBois, 346 F.3d 213, 216 (1st Cir. 2003). Thus, Hewes could have served Officer Doe by delivering a copy of the summons and complaint (1) to Officer Doe personally; (2) at his usual place of abode with

someone of suitable age and discretion who resides therein; or (3) to an agent authorized by appointment or by law to receive service of process on behalf of Officer Doe, in accordance with Maine state law. Fed. R. Civ. P. 4(e); Me. R. Civ. P. 4(d)(1) (permitting service on "an agent authorized by appointment or by law to receive service of process").

Hewes failed to properly serve Officer Doe with process. She admitted that she served Sergeant Nickerson because she did not know the identity of Officer Doe. Although Sergeant Nickerson may have been the "person designated by law to accept service of process on behalf of the Brewer Police Department," the Police Department may not, in turn, accept service of process for an individual officer who has not authorized it to do so. Fed. R. Civ. P. 4(e); see also Perez Lopez v. Mangome, 117 F.R.D. 327, 328 (D.P.R. 1987) (holding that service of process was not proper because the place of employment of the defendant police officers did not qualify "as their dwelling house or usual place of abode").

Indeed, this Court has long held that a "defendant must be served in accordance with Fed. R. Civ. P. 4 in order for the court to secure personal jurisdiction over him." Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988); see also Caisse, 346 F.3d at 216 ("[T]o serve [defendants] in either an individual or official capacity, [plaintiff] had to comply with Fed. R. Civ. P. 4(e), providing for service of process

on individuals."). Because no facts indicate that Officer Doe authorized Sergeant Nickerson or the Brewer Police Department to accept service on his behalf, service was invalid. The district court properly dismissed the complaint against him for lack of personal jurisdiction.

### 2. The Motion to Extend and Enlarge

We review a district court's refusal to give a plaintiff more time to effectuate service of process for abuse of discretion. See, e.g., Benjamin v. Grosnick, 999 F.2d 590, 591 (1st Cir. 1993). "Abuse-of-discretion review is respectful but appellate deference is not unbridled." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013).

Under the Federal Rules of Civil Procedure, a plaintiff has 90 days after filing the complaint to serve a defendant. Fed. R. Civ. P. 4(m). If the defendant is not served within that time frame, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. Refusal to grant an extension when the plaintiff shows good cause for the failure to effect timely service constitutes error. But not every error requires reversal. "Unless justice requires otherwise, no error . . . by the court or a party -- is ground for granting a new trial, for setting aside a verdict, or for vacating,

modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. Thus, we will disturb a district court's judgment only when the error "affect[s] any party's substantial rights." Id. Here, we first assess whether the district court erred in failing to grant the motion to extend and enlarge, and then, if so, whether the error affected Hewes's substantial rights.

Hewes stresses that even though she showed good cause for failing to effectuate service of process in a timely manner, the district court denied her motion to extend and enlarge the time to serve Officer Doe. She argues the denial was an abuse of discretion.

A "district court acts well within its discretion in refusing to allow an extension." Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 534 (1st Cir. 2006). But a district court abuses its discretion when it (1) commits a legal error, (2) "makes a serious mistake in weighing relevant factors," (3) ignores a "material factor deserving significant weight," or (4) relies on "an improper factor." Alston v. Town of Brookline, 997 F.3d 23, 44 (1st Cir. 2021) (citation modified). Here, the district court did not determine whether Hewes showed good cause for failing to serve Officer Doe within 90 days after filing the complaint. See Fed. R. Civ. P. 4(m). The relevant question is whether the district court's failure to make a good cause finding constitutes a legal error, and, if so, whether the error was prejudicial.

The non-discretionary language of Rule 4(m) commands district courts to inquire whether a plaintiff has good cause for failing to serve a defendant. See Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." (emphasis added)); see also Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995) ("The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service . . . . If good cause is shown, the plaintiff is entitled to a mandatory extension of time."). Because the good cause inquiry is mandatory, not discretionary, it was legal error to rule without that inquiry.

Thus, we must decide whether the district court's error was prejudicial or harmless. "An error affects substantial rights if it was 'prejudicial,' meaning if the error 'affected the outcome of the district court proceedings.'" Ramirez-Burgos v. United States, 313 F.3d 23, 29 (1st Cir. 2002) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). In challenging the district court's ruling, Hewes contends that the district court's decision to deny her motion to extend and enlarge was the reason she could not add Officer Doe to the amended complaint when she discovered his identity.

Hewes's argument finds no anchor in the record because the district court issued a scheduling order which gave her over

- 41 -

a year to amend the complaint.[13] This time frame far exceeded the additional time Hewes asked for in her motion to extend and enlarge, as she only requested an additional 90 days. Hence, the district court's denial of her motion to extend and enlarge neither precluded her from finding the identity of Officer Doe, nor prevented her from adding him as a defendant within the given deadline. By giving Hewes more than a year to amend her complaint and add Officer Doe as a defendant, the district court cured any prejudice that would have resulted from denying her motion to extend and enlarge. The district court's denial of Hewes's motion to extend and enlarge thus amounts to nothing more than harmless error.

### 3. Motion to Amend the Complaint

Like motions for extensions of time, "[w]e review a district court's denial of a motion to amend for abuse of discretion." Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017). Under the Federal Rules of Civil Procedure, a "party may amend its pleading once as a matter of course no later than 21 days after serving it . . . ." Fed. R. Civ. P. 15(a)(1)(A). But if a party wants to amend the complaint after that period, it must obtain "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

---

[13] Recall, Hewes had until October 5, 2022, to amend her complaint.

Leave to amend should be freely given "when justice so requires." Id. But "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). "Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)." Id.; see also Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019) ("In that event, a motion to amend filed outside the parameters set by the scheduling order will be granted only upon a showing of good cause." (citation modified)). The good cause standard "makes perfect sense: without it, scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient." Miceli, 914 F.3d at 86 (citation modified). "Properly deployed, the elevated good cause standard puts teeth into Rule 16(b) scheduling orders and preserves the integrity and effectiveness of [such] scheduling orders." United States ex rel. D'Agostino v. EV3 Inc., 802 F.3d 188, 194 (1st Cir. 2015) (citation modified).

"The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." Miceli, 914 F.3d at 86. "The longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself

a sufficient reason for the court to withhold permission to amend." Id. (citation modified).

In April 2023 -- almost two years after filing suit -- Hewes identified Officer Doe and filed the motion to amend the complaint and to add him as a defendant. At that point, six months had passed since the deadline to amend. The parties had completed discovery, multiple parties had filed Notices of Intent to File Summary Judgment Motions, and trial was scheduled for September. Given the late stage of litigation, the district court concluded that "even though there [was] no indication that Hewes engaged in dilatory conduct, allowing [her] to amend her Complaint at this juncture would unjustifiably delay this matter and unduly prejudice the Defendants." Hewes v. Pangburn, 2023 WL 3550702, at *3.

We have previously said that "we defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial." Mulder, 865 F.3d at 20 (citation modified). A district court "must often be firm in managing crowded dockets and demanding adherence to announced deadlines." Perez-Cordero, 440 F.3d at 533 (quoting Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990)). Allowing Hewes to amend her complaint in April 2023 would have "delay[ed] the completion of this case by requiring the reopening of discovery and, possibly, permitting a round of preliminary motions . . . ." Hewes v.

Pangburn, 2023 WL 3550702, at *3. The district court's rationale in denying Hewes's motion fell squarely within its discretion to deny leave to amend when the plaintiff's delay prejudices the defendants. See Miceli, 914 F.3d at 86.

Of course, we do not take lightly Hewes's assertion that the Brewer Police Department concealed the identity of Officer Freeman. Such allegations, if substantiated, would be deeply alarming. But, as the district court pointed out, Hewes could have sued both Officer Freeman and the Brewer Police Department in a separate lawsuit. Hewes, therefore, was not prejudiced at the time the district court denied her motion to amend the complaint. We discern no abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we **affirm** the district court's decision.